Lewis Edward MATTHEWS, Plaintiff,

v.

Otis L. BROWN et al., Defendants.

Civ. A. No. 384–71.

United States District Court,
E. D. Virginia.

May 2, 1973.

R. Gordon Smith, and Gilbert E. Schill, Jr., Richmond, Va., for plaintiff.

William A. Carter, III, Alexandria, Va., for defendants.

## MEMORANDUM

RICHARD E. ROBINSON, Senior District Judge.

This action came on for trial before the Court. The following constitutes the Court's findings of fact and conclusions of law.

This action was brought pursuant to 42 U.S.C. § 1983 by an inmate at the Virginia State Penitentiary seeking money damages and injunctive relief. Jurisdiction is alleged to be conferred by 28 U.S.C. § 1331 [a] and 28 U.S.C. § 1343 [3] and [4].

Since this action has been determined to be a Complaint filed pursuant to 42 U.

S.C. § 1983 the parties will hereinafter be referred to as plaintiff and defendant in lieu of "Petitioner" and "Respondent".

Plaintiff is an indigent and counsel was appointed. There are no provisions for payment by the Government and the Court notes that counsels' participation in this matter is certainly to be commended.

It is the position of the plaintiff that he has been subjected to cruel and unusual punishment through gross negligence by state penal authorities acting under color of state law and that this is thus an action properly brought pursuant to 42 U.S.C. § 1983.

There is no controversy over certain of the facts. The plaintiff, Lewis Edward Matthews, at the time of trial and at the time of injury, was an inmate at the Virginia State Penitentiary. On May 7, 1971, the plaintiff was working by assignment in the License Tag Shop [Tag Shop]. The plaintiff was operating a 22 ton press manufactured by the Niagara Machine and Tool Works of Buffalo, New York [motorcycle press] which was used to manufacture motorcycle license tags.

The end of plaintiff's left middle finger was "mashed" by the descent of the pressure ram. The plaintiff was then taken to the prison hospital and Dr. Stevenson, the Penitentiary surgeon surgically removed the injured portion of the finger immediately following the occurrence on May 7, 1971. On June 17th, 1971, additional minor surgery was performed, and the pathological diagnosis was a traumatic neuroma of the finger. The facts concerning the medical treatment and the condition of the tag shop are in dispute.

The credible evidence clearly establishes that plaintiff was given tallwin for pain, as well as penicillin and a toxied booster. The medication for pain was also administered on May 8, 1971, the day following the surgery. The plaintiff was then discharged from the hospital and no further medication was prescribed.

The plaintiff testified that he requested medication for pain but was not given any and was denied access to medical treatment. The plaintiff's own testimony indicates that he was seen by Dr. Stevenson on May 10th, 1971, when the finger was x-rayed, and also a week after the x-ray. The medical records reflect the x-ray and a subsequent examination by Dr. Stevenson on June 8th, 1971 when additional minor surgery was recommended. The plaintiff also testified his bandages were changed by inmate nurses at the hospital.

Dr. Stevenson testified that usually a traumatic neuroma is painful only if touched and could recall no complaints by the plaintiff which would have justified the prescription of any further medication. Dr. Stevenson further testified that any medication with addictive qualities is prescribed with caution in a prison setting, and that no further medication was prescribed after the second operation because of the minor character of the operation. The plaintiff testified that the finger as of the date of trial was sensitive if hit against something, but did not relate any further complaints.

No evidence was offered which established that any incorrect surgical procedures were followed, and from all appearances the finger seems to have healed with no complications.

Mr. Malicott, an official of the prison who was the foreman of the tag shop [during and after the injury] testified that the plaintiff had not asked him for permission to obtain further medical attention, and the supervisor of the tag shop testified that the plaintiff had made no request or complaint to him concerning any medical treatment.

The Court finds that the preponderance of the credible evidence establishes that the plaintiff was provided reasonable medical care and was allowed reasonable access to qualified medical

personnel and facilities. *See* Blanks v. Cunningham, 409 F.2d 220 [4th Cir. 1969].

■ Even had the plaintiff established a simple claim of malpractice this Court would not have jurisdiction to grant relief pursuant to 42 U.S.C. § 1983. *See* Tolbert v. Eyman, 434 F.2d 625 [9th Cir. 1970]. Since the plaintiff has failed to establish even simple malpractice it clearly follows that the plaintiff is not entitled to any relief with respect to his medical treatment.

The plaintiff also contends that the condition of the tag shop was grossly unsafe and further contends that the defendants knowingly subjected him to these conditions and put him in constant danger and imminent danger and fear of loss of limb which circumstances constituted cruel and unusual punishment.

There is conflicting testimony as to the cause of the accident in question. According to the accident report the injury occurred because the plaintiff neglected to remove his foot from the foot pedal [which engaged the pressure ram] while extracting a die and accidentally applied pressure to the pedal which caused the ram to descend and hit the tip of the plaintiff's finger. [Defendants' Exhibit # 3].

This report was prepared by C. L. Coffey, a defendant in this action and then supervisor of the tag shop. Mr. Coffey was on duty at the time of the injury, and proceeded to the hospital to interview the plaintiff after the surgery had been performed on the finger.

The plaintiff testified that an interview took place at the hospital but testified that he deliberately refrained from talking about the cause of the injury to his finger, and instead related other alleged deficiencies in the tag shop.

The plaintiff testified that the ram on the press would activate without any pressure on the foot pedal, and that his foot was off the pedal at the time the ram descended on his finger.

The evidence was undisputed that after the injury to the plaintiff's finger that the foot pedal was dismantled and in lieu thereof two buttons were installed in such a manner that both hands necessarily were required to push the buttons to activate the ram. This modification would eliminate the possibility of an inmate injuring himself through his own neglect to remove his foot from the pedal while his hand was under the ram.

There was also testimony that no guard was over the foot pedal so that a falling object could depress the pedal and activate the ram. There was, however, no evidence that any object fell on the pedal at the time of the plaintiff's injury or that any other injury had been caused by an object falling on the pedal. The plaintiff does not even contend that this was the cause of his injury, but instead contends that the machine "malfunctioned"; that is operated without any activation of the foot pedal or other known methods. Other inmates testified that the machine would malfunction.

However, Mr. Gentry, the mechanical engineer for the Industrial Department of the Virginia Division of Corrections testified that he had never known of an instance where the motorcycle press had malfunctioned, nor had he received any complaints about this machine. Mr. Gentry described the motorcycle press as a mechanically powered press and testified that he could not find and did not know of any condition which could have caused the motorcycle press to malfunction.

Mr. Gentry pointed out that he had received complaints about a hydraulic machine malfunctioning in 1966 or 1967.

In 1967 a former inmate did suffer an injury on the hydraulic machine [a 300 ton rimming press] which resulted in the amputation of the middle and ring finger of his right hand.

The inmate, since released, testified that this machine malfunctioned, but

there was also testimony which contradicted this theory, and indicated "horseplay" was responsible.

Mr. Gentry investigated that accident and observed no malfunction even after repeated operations of the machine. Certain wiring was replaced in an abundance of caution because one possibility was a "freak electrical short-circuit" [Plaintiff's Exhibit # 7].

This machine, [hydraulic] of course, had no connection with the plaintiff's injury and was then operated by buttons not a foot pedal.

The hydraulic machine was rewired after the injury in 1967 and it was Mr. Gentry's testimony that he had received no complaints about the machine since that date.

It was also stated that substantial sums had been expended on safety in the tag shop and that the safety condition of the tag shop in the Virginia State Penitentiary was above average for prisons and for industry. The Court finds that Mr. Gentry was well qualified and finds his testimony credible and persuasive notwithstanding any conflicting testimony.

A safety inspection of the tag shop was conducted on July 24, 1970, by an Industrial Safety Representative with the Department of Labor and Industry for the Commonwealth of Virginia and no violations or recommendations were found relative to the tag shop. [Defendants' Exhibits 1 and 2].

The inspection report is certainly at variance with the picture presented by the plaintiff of the widespread and grossly unsafe conditions in the tag shop less than a year later.

The Niagara power press which was the machine on which the plaintiff was injured was not inspected on that date because it was not in operation [this machine has only a limited function and is used for approximately two months of the year]. The Court is, however, satisfied from the preponderance of the credible evidence that due care was and has been exercised with respect to the maintenance and safety of the equipment in the tag shop [including the motorcycle press] and further finds that the credible evidence does not establish any gross or even simple negligence on the part of any of the defendants, or any other official or employee of the Commonwealth of Virginia who had any connection with the events leading to this action.

■ While an injury such as has been suffered by the plaintiff is a regrettable event it does not follow that the mere occurrence of an accident is evidence of negligence.

■ The plaintiff takes exception to the denial of his motion for payment of expert fees for the inspection of the motorcycle press. In ruling upon pretrial motion Judge Kellam held that there is no proper authority to authorize such payment. I concur.

■ Moreover, even assuming the temporary existence of a negligent condition in one machine this could not establish cruel and unusual punishment under the facts and circumstances of this action.

As stated in Penn v. Oliver, 351 F. Supp. 1292 [E.D.Va.1972] in pertinent part:

"An isolated act or omission by a prison official that allows an attack to occur and which involves only simple negligence does not, absent special circumstances, create a constitutional deprivation over which this Court has jurisdiction. Without an independent basis of jurisdiction, the Court cannot hear such a claim."

Cf. Tolbert v. Eyman, 434 F.2d 625 [9th Cir. 1970].

■ The Court has found that the credible evidence fails to establish any negligence in the care and maintenance of the press.

Even if an expert witness for the plaintiff were to present evidence to the

contrary this Court is of the opinion that in view of the credible evidence it could not be seriously contended that there was a continued disregard for safety and knowing and conscious refusal by defendants to provide readily available safety equipment with respect to the motorcycle press or any other aspect of the tag shop.

As previously noted, after the injury in question here the motorcycle press was inspected and modified so that an inmate could not probably negligently injure himself. This is certainly not a continued disregard· for safety nor a conscious refusal to provide safety equipment.

While the action in Penn v. Oliver, *supra,* involved an assault the principle would nonetheless be applicable in this action, and thus the lack of an expert is not prejudicial under the facts and circumstances of this case.

There is another independent basis upon which judgment should be granted for the defendants.

It was held in Landman v. Royster, 354 F.Supp. 1302 [E.D.Va.1973] that:

"An official is not liable for the acts of his subordinates in the absence of some personal involvement in those acts on the part of the party sought to be charged."

■ The requirement of "personal involvement" is established if there is personal direction or actual knowledge and acquiescence in subordinates' acts, but as further stated in Landman v. Royster, *supra:*

"The rule in [the 4th] circuit appears to be that the higher official cannot be charged with knowledge of his subordinates' acts when he in fact is not aware of them."

The only documentary evidence introduced with regard to complaints by inmates is a letter from an inmate Dale C. McQuiston, dated May 3, 1971. Inmate McQuiston devotes the first three quarters of the letter to his complaint that Black inmates were assigned to operate machines even though inmate McQuiston had more seniority and had worked in the machine shop for nine months.

The last paragraph of the letter presents a complaint about the lack of safety guards on the machine. [Plaintiff's Exhibit 9]. There is no mention of defective or malfunctioning machines, or other mention of any deficiency with regard to safety. Certainly a letter from an inmate requesting action so that he could be assigned to a machine would be inconsistent with the contention that the equipment was unsafe to operate, and the recipient of such a letter would not be expected to investigate safety conditions not mentioned in the letter.

Defendant Slayton is the Superintendent of the Penitentiary and Defendant Brown is the Secretary of Human Affairs of the Commonwealth of Virginia. Neither had any duties which required close supervision of the tag shop and the preponderance of the credible evidence does not establish any knowledge of even complaints by the plaintiff nor does the credible evidence establish any actual knowledge [except for the letter] of any purported deficient safety conditions of the tag shop, nor can any inference be raised that knowledge existed because of supervisory duties.

Defendant Coffey, was at the time of the injury, the supervisor of the tag shop but again the credible evidence is wholly insufficient to maintain an inference of knowledge even if such inference were raised by his role of supervisor. Defendant Coffey testified that the plaintiff never complained to him about safety conditions or medical treatment and further testified that the plaintiff was not forced to work on machines in the tag shop. There was conflicting testimony to the contrary but the Court finds defendant Coffey's testimony credible and persuasive.

A separate order will be entered dismissing this action on the merits.