# Staunton

## C. E. Rives and Indemnity Insurance Company of North America v. Mary J. Bolling, Administratrix of the Estate of Louise Bolling, Deceased.

September 9, 1942.

Record No. 2552.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Spratley, JJ.

The opinion states the case.

*Robert B. Davis, O. M. Vicars* and *E. D. Vicars,* for the plaintiffs in error.

*M. M. Heuser,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Mary J. Bolling, administratrix of the estate of Louise Bolling, deceased, instituted this action for the recovery of

damages in the sum of $2,000 against C. E. Rives, a State police officer, and his surety, the Indemnity Insurance Company of North America. The notice of motion alleged that Rives, on duty as a police officer, did, while cleaning, examining, and inspecting his service revolver, which he was required to keep in good working condition, negligently and carelessly cause a bullet to be discharged from the said revolver wounding and killing the decedent, Louise Bolling. The insurance company was made a party by reason of its suretyship upon the bond hereinafter mentioned. The defendants filed separate demurrers, pleas of not guilty, and answers denying the allegations of the notice of motion.

The trial court overruled the demurrers, and the case went to trial upon the general issue. Motions to strike at the conclusion of the evidence for the plaintiff and at the conclusion of all of the evidence were likewise overruled.

The jury returned a verdict for the plaintiff in the sum of $2,000 against both defendants. To the action of the trial court in entering judgment thereon, this writ of error was granted.

The defendants assign several grounds of error, the principal grounds being (1) that the evidence fails to show that the injury complained of resulted from any negligent act of the defendant, Rives; and (2) that it fails to show that the accident occurred while Rives was on duty within the meaning of the statute or of the bond upon which this action is based.

There is no conflict in the evidence. Rives was a police officer appointed by the Director of the Division of Motor Vehicles of Virginia. He was stationed in the patrol district which includes Norton, Virginia. He and two other State police officers resided at Norton in the home of Mrs. Mary J. Bolling, the mother of Louise Bolling, decedent. Rives roomed with a fellow-trooper, P. E. Trower.

Rives came home to his room between ten-fifteen and ten-thirty p. m., on the night of January 23, 1941, after doing patrol duty from twelve o'clock noon of that day until ten o'clock p. m. When he arrived, Trower, Louise

Bolling, and a first cousin of the latter, Evelyn Bolling, were in his room. The two young women had been called in by Trower to make up the beds and straighten up the room because the housekeeper had been busy and unable to perform that duty on that day.

After they had performed the tasks for which they had been called, the young women remained in the room talking to Trower and helping him clean his cartridges and the metal ornaments and fittings on his uniform.

Rives upon his arrival, joined in the general conversation and began the work of cleaning two revolvers and their respective cartridges. One was his service revolver, and the other was a privately owned firearm which he had borrowed from Trower. He said he first unloaded his service revolver and cleaned it and its bullets. He then laid both revolvers on a table. Next he cleaned the revolver belonging to Trower, wiped its bullets off, reloaded it, and put it on a dresser in the room.

Rives then went back where he had been cleaning his service revolver, picked it up, and started across the room to put it in his holster. He says, "Remembering I had not loaded it, I twirled it on my finger and started back to the table to get the cartridges to load it with, and on the way back I twirled it again and at this time the gun went off." He thought the hammer was down; but he could not explain why he had forgotten that bullets were in the gun or why he twirled it on his finger.

The bullet discharged from the gun struck Louise Bolling, sitting on the bed about six to eight feet away from Rives, causing her instantaneous death. She was twenty-six years of age.

The revolver was furnished Rives by the State as a part of his police equipment. It weighed, loaded, two pounds and six ounces. It could be fired either from a cocked position, or, if sufficient pressure was applied, with the hammer resting against the cartridge.

Under regulations of the Division of Motor Vehicles, State police officers are strictly required to keep their uniforms,

equipment, and firearms clean and in good condition, subject to inspection at all times. The officers perform regular duties within specified hours but are subject to call at any and all times when needed; and are vested with the powers of a sheriff for enforcement of all the criminal laws of this State. Virginia Code, 1936, section 2154 (52) and (53).

The officers of the police force do not have an opportunity to polish their brass or clean their guns while on patrol duty. That work and duty is usually performed in the rooms which they occupy as their homes or offices.

Rives executed a bond in accordance with Virginia Code, 1936, Supplement, 1940, section 2154 (51a), in the sum of $2,000, with the Indemnity Insurance Company of North America, as surety.

The pertinent provisions of section 2154 (51a), are as follows:

"Bond of police officers; liability insurance policies.—All police officers appointed by the Director of the Division of Motor Vehicles, and engaged in the enforcement of criminal laws and the laws relating to the operation of motor vehicles upon the roads and highways of this State, shall before entering upon or continuing in their duties, enter into bond, with some solvent guaranty company authorized to do business in this State, as surety, in the penalty of two thousand dollars, and with condition for the faithful and lawful performance of their duties. * * * All persons injured or damaged in any manner by the unlawful, negligent, or improper conduct of any such officer while on duty may maintain an action upon such bond.

"In lieu of posting bond as provided herein, any such police officer may furnish an adequate liability insurance policy as proof of his ability to respond in damages, which may be adjudged against him in favor of any person or persons injured or damaged in any manner resulting from his unlawful, negligent or improper conduct while on official duty, to the amount of two thousand dollars. * * * "

The bond was conditioned in accordance with the provisions of the statute. The liability of the surety there-

under was limited and restricted to the sum of $2,000 "by reason of or because of any act or acts of, or default or defaults of, or failure or failures in the faithful and lawful performance of the duties of," the officer insured.

The cause of the accident was undoubtedly the fault of Rives. He had forgotten that he had reloaded his revolver after cleaning it. Without making any examination, he twirled it upon his finger while looking for cartridges to reload it. Whatever weight or pressure was required to cause a discharge of the revolver was furnished by its weight against the finger on the trigger in the process of being twirled.

A police officer is charged with knowledge of the danger inherent in the handling of a loaded weapon. It was the duty of Rives to take active and careful measures to discover whether or not the revolver was loaded before he used it in a manner calculated to cause injury. The failure to perform this obligation constituted negligence. That which has happened here has happened too often to be unexpected.

It is almost an axiom that unloaded guns, that is, guns thought to be unloaded, are the most dangerous. The tragic story of death and injury by the careless handling of deadly weapons without an examination as to their condition is all too familiar in this country. The records of the past and current history are all too replete with the ever-recurring story.

It was the function and duty of the jury to determine whether the officer was guilty of negligence under the particular circumstances, and the jury having so found, the result is conclusive against Rives.

The bond of the defendant insurance company, given under the statute, was "conditioned for the faithful and lawful performance of the duties" of the police officer. These duties, of course, refer to his actions while on duty and in the performance of any work or acts assigned to him as an officer. They embrace all manner of acts required of him by statute or under the rules and regulations of the Division

of Motor Vehicles. They include the enforcement of criminal laws, the prevention and detection of crime, patrol work, and the maintenance of the firearms, supplied him by the State, in a clean and fit condition for use.

The task of keeping his service revolver clean devolves upon the officer himself. The place of performance and the time of performance is immaterial, except that the condition of the revolver must meet the requirements of the regulations and the inspection. No specific place for cleaning is provided and almost necessarily the officer cleans his firearms not when he is on the highway on patrol duty, but at his home or office.

It was a negligent and improper performance of the officer's duty to twirl a loaded revolver upon his finger while he was in the process of cleaning his revolver or in the act of returning it to his holster. It was as much an unlawful and improper performance of his duty as if he had, in patrolling his district, in the manner and means provided by the State, recklessly driven his service automobile against the decedent in an effort to show her how fast he could drive the vehicle.

Negligence is of itself no part of official duty. Negligence may be the failure to perform duty or the performance of duty in an unlawful or improper manner. Official acts may be lawfully or unlawfully performed, dependent on the manner of performance. It is for relief against negligent or unlawful performance that the statute requires a liability bond to be given. No relief is afforded against lawful acts properly performed. If official acts only mean lawful acts, no recourse could be had against any surety.

We think the clear language and intendment of the statute,—Virginia Code, 1936, Supplement, 1940, section 2154 (51a),— requires that the bond given shall cover any act or work connected with or necessarily incidental to the duties of a police officer appointed under the provisions of the Motor Vehicle Code. The bond given covered the same field as the statute. Where, as here, the negligent perform-

ance of a duty required of an officer is the proximate cause of an injury, the surety is liable.

This case is one of first impression in Virginia, and we have been cited no case similar in all respects from any other jurisdiction. See, however, *State* v. *Lentz*, 132 Ohio State 50, 5 N. E. (2d) 167.

We find no error in the giving and refusing of instructions or in other rulings of the trial court. The verdict of the jury is sustained by the evidence, and the judgment of the trial court is affirmed.

*Affirmed.*