## Richmond

JULIA LAWHORNE, PERSONAL REPRESENTATIVE OF ELMER R. LAW-
HORNE, DECEASED V. JOHN F. HARLAN, JR., ALEX H. SAWYER AND
ANDREW R. PULITO, M.D.

November 26, 1973.

Record No. 8219.

Present, Snead, C.J., I'Anson, Harrison, Cochran, Harman and Poff, JJ.

F. *Guthrie Gordon, III* (*John C. Lowe; Lowe & Gordon,* on brief),
for plaintiff in error.

*Edward R. Slaughter, Jr.; Jack B. Russell* (*David Craig Landin;
William D. Jones; McGuire, Woods & Battle; Browder, Russell, Little
& Morris,* on briefs), for defendants in error.

HARMAN, J., delivered the opinion of the court.

The question presented here is whether the cloak of sovereign im-
munity protects the administrators and a surgical intern of the Uni-
versity of Virginia Hospital (hospital), an organ of the state, in an
action for wrongful death brought by the personal representative of
a former patient who is alleged to have died because of negligence in
the diagnosis, treatment, and care of his injury.

Writs of error were sought to a ruling of the trial court sustaining
pleas of immunity filed by the hospital, the administrators and the
surgical intern. We refused a writ of error to this ruling as it applied

to the hospital and this portion of the judgment has become final. We granted a writ of error to the ruling as it applied to the administrators and the surgical intern.

The essential facts for decision on the pleas of immunity, gleaned from the proceedings and from an evidentiary hearing upon the pleas, are not in dispute.

John F. Harlan, Jr., (Harlan) is the Chief Administrator of and is responsible for overall administrative supervision of the hospital. He is not a physician.

Alex H. Sawyer (Sawyer), who is not a physician, is an assistant administrator of the hospital. He is subject to the direction and control of Harlan and, as a part of his duties, has direct administrative supervision of the emergency room at the hospital.

Andrew R. Pulito (Pulito), on the date of the alleged negligence, was a recent medical school graduate in his first year of a five-year postdoctoral training program. His position was that of a surgical intern. Pulito was a salaried employee of the hospital. He was not fully licensed to practice medicine, having completed only a part of the licensing examinations, as is the case with most interns. Pulito could only practice at the hospital in an approved training and instruction program under the supervision of the licensed physicians of the hospital staff. Code § 54-276.7. Under the training program Pulito was required to provide "house services" which included a period of service on the surgical staff in the emergency room of the hospital.

The pleadings allege that Elmer R. Lawhorne (Lawhorne), the deceased, on March 8, 1970, received a severe blow on his head. On March 9 he was taken to the emergency room of the hospital where he was seen, treated and released by Pulito. The motion for judgment alleges that X rays were taken of Lawhorne's head which revealed that he had sustained a fractured skull but his mother, who accompanied him, was not so advised. It further alleges that Lawhorne and his mother were advised by "agents" of the hospital that "there was nothing seriously wrong" with Lawhorne. The following day, March 10, Lawhorne's "condition worsened" and he was returned to the hospital where it was "discovered that [Lawhorne] had suffered a fractured skull on March 8." Lawhorne subsequently died on March 24, allegedly as the result of the delay "in diagnosing and treating the fractured skull."

Pulito is alleged to have been negligent in (1) not properly determining that Lawhorne suffered from a fractured skull, and (2) not

summoning Lawhorne to the hospital for further treatment when Pulito later determined from the X rays that Lawhorne had suffered a fractured skull.

Harlan and Sawyer are alleged to have been negligent "in that the staff and procedures [at the hospital] were inadequate properly to diagnose and treat [Lawhorne's] wound, and inadequate to summon him to said hospital when error was discovered."

It has long been the settled law in Virginia that a hospital which is an organ of the state is immune, under the doctrine of sovereign immunity, from actions in tort. *Maia's Adm'r.* v. *Eastern State Hospital,* 97 Va. 507, 34 S.E. 617 (1899).

This immunity is also available to an employee of the state or of one of its agencies who performs supervisory functions or exercises discretionary judgment within the scope of his employment. He will not be held liable for simple negligence, because his acts are the acts of the Commonwealth. *City of Richmond* v. *Long's Adm'rs.,* 17 Gratt. (58 Va.) 375, 378 (1867); *Sayers* v. *Bullar,* 180 Va. 222, 229, 22 S.E.2d 9, 12 (1942).

However, an employee of a state agency who performs duties which do not involve judgment or discretion but which are purely ministerial, is liable for injury which results from his negligence. *Wynn* v. *Gandy,* 170 Va. 590, 197 S.E. 527 (1938); *Rives* v. *Bolling,* 180 Va. 124, 21 S.E.2d 775 (1942); and *Berry* v. *Hamman,* 203 Va. 596, 125 S.E.2d 851 (1962). Nor does the cloak of sovereign immunity protect a state employee who commits an intentional tort, *Elder* v. *Holland,* 208 Va. 15, 155 S.E.2d 369 (1967), or one whose act is so negligent as to take him outside the scope of his employment. *Sayers* v. *Bullar, supra; see Crabbe* v. *School Board and Albrite,* 209 Va. 356, 164 S.E.2d 639 (1968).

Here it is clear that Harlan and Sayers were exercising discretionary powers in performing their duties as administrators of the hospital, and they were clearly entitled to have their pleas of immunity sustained. Public policy dictates that this should be the rule and, in spite of the plaintiff's assertion to the contrary, the doctrine of *respondeat superior* has no application to public officers who act through subordinates in the performance of their official duties. *City of Richmond* v. *Long's Adm'rs, supra; Sawyer* v. *Corse,* 17 Gratt. (58 Va.) 230, 240-41 (1867).

We also find that Pulito, the surgical intern, is entitled to the cloak of sovereign immunity. He was an employee of the hospital, an organ

of the Commonwealth, vested with and required to exercise discretion and judgment in connection with those persons who presented themselves as patients at the emergency room of the hospital. In performing these duties he was required, in the exercise of his best judgment, either to treat and release the patients or to treat and admit them to the hospital.

Pulito had no right to choose his patients, and no contractual relationship was created between him and the hospital's patients. He received no compensation from the patients for his services, his only compensation being the salary paid him by the hospital.

In pleadings and at argument counsel for the personal representative has not claimed that Pulito was guilty of more than simple negligence. He has neither alleged nor claimed that Pulito committed an intentional tort or that Pulito was so negligent as to take himself outside the scope of his employment.

Clearly Pulito, an employee of an agency of the Commonwealth, was performing within the scope of his employment, discretionary, not ministerial, acts. Since the personal representative has failed to allege or establish that the claim falls within one of the exceptions to the sovereign immunity rule as it applies to discretionary employees, we find no error in the trial court's ruling that sovereign immunity extends to Pulito.

*Affirmed.*

COCHRAN, J., dissenting.

As I am unable to reconcile the views expressed in the majority opinion with the principles approved in *Crabbe* v. *School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968), I respectfully dissent.

In *Crabbe* the motion for judgment alleged that the plaintiff was injured while being instructed, in a high school class, in the use of a power saw. It further alleged that because of the negligence of the School Board the saw was defective and improperly equipped, that plaintiff's teacher, Albrite, was negligent in permitting the plaintiff to use the tool which Albrite knew, or should have known, was defective and improperly equipped and in failing properly to instruct the plaintiff in the use of the tool, and that as a direct and proximate result of such negligence, plaintiff was injured. In reliance upon *Kellam* v. *School Board of the City of Norfolk*, 202 Va. 252, 117 S.E.2d 96 (1960), we affirmed the action of the trial court in sustaining the School Board's special plea of sovereign immunity. We reversed the

action of the trial court, however, in sustaining Albrite's special plea of sovereign immunity which Albrite contended extended from his employer to him. We held that the fact that Albrite was performing a governmental function for his employer "does not mean that he was exempt from liability for his own negligence in the performance of such duties."

In *Crabbe* we did not attempt to characterize Albrite's duties as either ministerial or discretionary. Indeed, the line between ministerial and discretionary functions is not always clear, for it is difficult to conceive of any official act that does not admit to some discretion in the manner of performance. *See* Prosser, Torts § 126 at 1017 (3d ed. 1964). It would seem, however, that the duties of the teacher in *Crabbe* were no less discretionary than the duties of the intern and the hospital administrators in the present case.

Moreover, the majority opinion casts the nebulous shadow of a new gradation of negligence, greater than ordinary negligence and sometimes perhaps less than gross negligence, so that the special plea of the intern would have been overruled if the motion for judgment had alleged "that he went beyond the scope of his employment or that he was so negligent as to take him outside of his employment." I not only oppose any extension of the gross negligence rule into new areas of tort litigation but I also disapprove as unwarranted the application of an intermediate degree of negligence to employees whose employers are entitled to plead sovereign immunity.

I would reverse the trial court's ruling that the sovereign immunity of the University of Virginia Hospital extended to the hospital administrators and the surgical intern and remand the case for a hearing on the merits as to these employees.