Glenice Irene **LEATHERS**, Plaintiff,

v.

Paul B. **SERRELL**, Defendant.

Civ. A. No. 72–C–31–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

May 10, 1974.

Edward B. Lowry, Taylor, Michie & Callaghan, Charlottesville, Va., for plaintiff.

R. Carter Scott, III, Browder, Russell, Little & Morris, Richmond, Va., for defendant Serrell.

Ralph D. Pinto, Charlottesville, Va., for defendant Carper.

## RULING ON MOTIONS TO DISMISS

DALTON, District Judge.

This is a diversity action filed pursuant to 28 U.S.C. § 1332 on November 15, 1972, by plaintiff Glenice Irene Leathers, a resident of Virginia. The amount in controversy is in excess of $10,000. Defendant Paul B. Serrell, M. D., is now a resident of New Hampshire; defendant Brenda C. Carper, a registered nurse, is now a resident of Georgia.[1]

The facts giving rise to this action, as best they can be determined at this stage of the proceedings, appear to be as follows: On January 25, 1972, the plaintiff, Mrs. Leathers, went to the University of Virginia Hospital, Charlottesville, Virginia, with several friends and

1. Mrs. Carper was added as a party defendant by a motion to amend the original complaint, which motion was granted by order of this court on January 4, 1974. This amendment was timely, as the date of the alleged injury in this case was January 25, 1972, and the applicable Virginia statute of limitations for personal injury actions is two years. Code of Virginia § 8–24 (1950). Defendant Carper contends that as she received no notice of the amendment adding her as a party to this action until after the two-year limitation period had run, the notice requirements for the "relation back" of amendments under Federal Rule of Civil Procedure 15(c) are applicable, and should be required in this instance. However, F. R.C.P. 15(c) is inapplicable here, as the amendment itself was timely made before the statute of limitations ran. As to the delay in the actual service of process, the court will but note that under both federal law and Virginia law, the action against Mrs. Carper was "commenced" by the filing of the amended complaint with this court on January 4, 1974. F.R.C.P. 3; Rule of the Supreme Court of Virginia 3.3(a) (1972). For cases on this point, see, e. g., Prashar v. Volkswagen of America, Inc., 480 F.2d 947 (8th Cir. 1973), U.S. appeal pending; Atkins v. Schmutz Manufacturing Company, 435 F.2d 527, 537 n. 47, 538 n. 48 (4th Cir. 1970). Defendant Carper's motion for summary judgment upon the ground of the running of the statute of limitations before she received notice must therefore be denied.

relatives to visit Mrs. Leathers' brother, who was seriously ill. While plaintiff was in a waiting room, she was approached by Dr. Serrell, an intern who had been treating plaintiff's brother, who informed Mrs. Leathers and the others that her brother had died. Plaintiff and one other woman in the waiting room became upset, whereupon Dr. Serrell offered them a sedative. Both women accepted the offer, and Dr. Serrell ordered the nurse in attendance, defendant Carper, to obtain the sedative.[2] In the presence of Dr. Serrell, Mrs. Carper administered an injection to the second woman without incident. In administering an injection in plaintiff's right arm, Mrs. Carper apparently was hindered somewhat by the long-sleeved sweater that plaintiff wore, and allegedly penetrated plaintiff's radial nerve, causing injuries to her right arm for which she now seeks compensation from both Dr. Serrell and Mrs. Carper.

## DR. SERRELL

Plaintiff maintains that she does not complain so much of Dr. Serrell's decision to administer a sedative, but rather of his alleged negligence in supervising the actual injection of it by Mrs. Carper, in that he knew or should have known that it was being given in an improper location. This brings us to the threshold question of Dr. Serrell's liability, as he has moved to dismiss the action on the ground of sovereign immunity. Dr. Serrell states that on January 25, 1972, and at the time he treated Mrs. Leathers, he was an employee and intern on the staff of the University of Virginia Hospital,[3] an agency of the Commonwealth of Virginia. He alleges that at all times that he treated the plaintiff he acted within the scope of his employment as an agent of the Commonwealth of Virginia, and that any decisions that he made were discretionary in nature. Dr. Serrell alleges that as he is an agent of the Commonwealth of Virginia, and since the General Assembly of Virginia has not consented to this action in tort against its employee, he is immune from liability. *See, e. g.*, Nickell v. Westervelt, 354 F.Supp. 111 (W.D.Va.1973).

Since the action herein was filed, the Supreme Court of Virginia in the case of Lawhorne v. Harlan, 214 Va. 405, 200 S.E.2d 569 (1973) has had the opportunity to rule on the immunity of a surgical intern at the University of Virginia Hospital. In *Lawhorne* it was held that the intern was entitled to the cloak of sovereign immunity while performing discretionary acts within the scope of his employment. In addition to this requirement, specific exceptions to the scope of his immunity were listed: intentional torts, Elder v. Holland, 208 Va. 15, 155 S.E.2d 369 (1967) and acts so negligent as to take one outside the scope of his employment, Sayers v. Bullar, 180 Va. 222, 22 S.E.2d 9 (1942), Crabbe v. School Board and Albrite, 209 Va. 356, 164 S.E.2d 639 (1968). Even before considering these exceptions, under the peculiar situation in this case this court must conclude that Dr. Serrell has not established a basis for the application of the doctrine of sovereign immunity in this action. Plaintiff contends that Dr. Serrell acted outside the scope of his employment in supervising her treatment since at no time was she a patient at the University of Virginia Hospital.[4] The *scope* of Dr. Serrell's duty as an intern is determined by stat-

---

2. The sedative apparently was 10 mg. of Valium 1M. Plaintiff says the intern's order was to prepare an injection. Defendant Carper maintains that it was left to her discretion, and plaintiff's preference, as to whether the sedative would be administered orally or by injection.

3. Since Dr. Serrell had not completed the third part of the National Board Examina-

tion, he was not licensed to practice in any state, except for a limited license to practice under his contract with the University of Virginia Hospital.

4. Though plaintiff does not press the issue, under the Virginia statute discussed below, it would seem that Dr. Serrell exceeded his authority in ordering sedatives for a non-patient.

ute in Virginia. Virginia Code § 54–276.7 (1972 Repl.Vol.) reads as follows:

Internes and residents in hospitals. —Unlicensed or licensed practitioners may be employed as internes or residents in a legally established and licensed hospital *provided their practice is confined strictly to persons who are bona fide patients within the hospital or who receive treatment and advice in an organized outpatient department of the hospital* to which ambulant patients regularly come for professional services rendered under supervision of licensed members of the hospital staff, and provided, further, that such employment is a part of a regularly established course of instruction for such internes or residents. Such interne or resident shall be responsible and accountable at all times to a licensed member of the staff. [Emphasis supplied.]

■ The intern in *Lawhorne, supra,* acted within the bounds of this statute, as he was assigned to the surgical staff in the emergency room of the hospital when he treated the patient therein. In treating a non "bona fide patient," for whatever practical or humanitarian motivations or reasons,[5] Dr. Serrell lost the cloak of sovereign immunity. By statute, he was not permitted to practice medicine except in conformity with § 54–276.7, and he thus exceeded the scope of his authority in treating plaintiff.

. . . [T]he immunity of the State from actions for tort extends to State agents and employees where they are acting legally and within the scope of their employment, but if they exceed their authority and go beyond the sphere of their employment, or if they step aside from it, they do not enjoy such immunity when they are sued by a party who has suffered injury by their negligence. Sayers v. Bullar, *supra,* 22 S.E.2d at 13.

Though no contractual relationship was created, and Dr. Serrell received no compensation from plaintiff, he did choose to treat Mrs. Leathers himself, when, for instance, he could have sent her to the hospital's emergency room. For these reasons, Dr. Serrell's motion to dismiss on the basis of immunity as an agent of the Commonwealth of Virginia must be denied.

## MRS. CARPER

In addition to her plea of the statute of limitations discussed above, Mrs. Carper has also entered a motion to dismiss on the ground of sovereign immunity, contending first that as a state employee —a registered nurse with the University of Virginia Hospital—she was performing discretionary functions, and second, assuming that she acted negligently, such negligence constituted no more than simple negligence.

Plaintiff has argued that the act of giving an injection is a ministerial rather than a discretionary act, and is therefore not protected by the scope of sovereign immunity, while counsel for Mrs. Carper has placed much emphasis on the discretionary aspects of a nurse's duties. At this point, the court can but observe, as did Justice Cochran in his dissent in *Lawhorne, supra,* 214 Va. at 409, that the line between ministerial and discretionary functions is not always clear, for it is difficult to conceive of any official act that does not admit to some discretion in the manner of performance. In Crabbe v. School Board and Albrite, *supra,* the Supreme Court of Virginia did not attempt to characterize defendant Albrite's duties as a high school shop teacher as either ministerial or discretionary, but nevertheless refused to extend his employers' sovereign immunity to his alleged negligence in failing to instruct a student in the proper use of a power table saw, and in allowing the student to use the saw even though Albrite allegedly knew or should have

---

5. Dr. Serrell's action, while apparently not in accordance with any specific hospital policy, seems to have been in line with the practice of some other hospital staff members, at least before this particular incident. Deposition of Dr. Surratt, pp. 19–22.

known it was in a defective condition. The act of administering an injection seems much less of a discretionary act than the actions of Albrite in the *Crabbe* case, and certainly does not rise to the level of the discretionary duties of the surgical intern in *Lawthorne, supra*, which involved almost total discretion in the manner of treating and releasing or admitting patients in a hospital emergency room. *See also*, Wynn v. Gandy, 170 Va. 590, 197 S.E. 527 (1938), in which the actions of a school bus driver were deemed ministerial.

Upon the authority of the *Crabbe* case, the court under the facts of this case as thus far developed, is constrained to deny defendant Carper's motion to dismiss on the ground of sovereign immunity. Ruling thusly, there is no need for this court to determine whether Mrs. Carper's alleged negligence constituted something greater than simple negligence.

Further pleadings if counsel are so advised shall be filed by May 30, 1974. A pre-trial conference is set for May 30, 1974 at 11:00 a. m. at Charlottesville, Virginia.