## CIRCUIT COURT OF THE CITY OF RICHMOND

Douglas Rae Dalson

v.

Terrell Don Hutto et al.

November 29, 1982

Case No. LD 1131

By JUDGE MARVIN F. COLE

On December 23, 1979, plaintiff Dalson was an inmate at the James River Correctional Center, assigned to the Wastewater Treatment Plant. His duties included taking and testing sewer samples, and general custodial work about the plant. His working hours appear to have been from 8:00 a.m. until 9:00 p.m.

On the above date at about 4:30 p.m. Dalson was in the # 1 barn at the center. While in the hayloft, Dalson fell through a "well" in the floor of the loft and was injured. The "well" measured approximately 4' x 4' and was not equipped with a guardrail or other protective covering.

Dalson alleges, among other things, that: (1) he was ordered into the barn to retrieve some hay for the Treatment Plant and thus was within the scope of his duties, and (2) the "well" was covered with hay and was thus concealed from his view. Mr. Charles Hicks, Dalson's supervisor, denies ordering him into the barn to get hay.

Key figures in this matter include Terrell D. Hutto, Director of the Virginia Department of Corrections; Robert M. Landon, Assistant Director for the Division of Institutional Services of the Virginia Department of Corrections; Robert G. Spann, Operations Chief in the Division of Institutional Services of the Virginia Department of Corrections; Robert C. Oliver, Consultant for Agricultural Programs in the Virginia Department of Corrections; and W. M. Riddle, Superintendent of the James River Correctional Center.

The issue in this case is: Are Hutto, Landon, Spann, Oliver, and Riddle entitled to immunity by a plea of sovereign immunity?

In *Elder* v. *Holland*, 208 Va. 15 (1967), a state police officer was sued by the plaintiff for defamatory words uttered during a hearing. The officer argued that he had spoken the words "in his official duties as a member of the Virginia Department of State Police," and was thus cloaked with the State's immunity from tort liability.

The Supreme Court of Virginia held that a state police officer was not immune from liability for defamatory words spoken while performing his duties as such officer. The court predicated that holding upon its prior decisions that a state employee may be held liable for negligent conduct in the performance of his duties, although the State itself was immune from liability by reasons of such acts of its employees. 208 Va. at 18, 19.

The codefendant high school teacher in *Crabbe* v. *School Board and Albrite*, 209 Va. 356 (1968), was sued for negligence by a student injured as a result of the teacher's alleged negligence. The codefendant, Albrite, allegedly was negligent in permitting the plaintiff to use a defective tool and in failing properly to instruct him in its use. Albrite argued that the School Board, in performing a governmental function, was therefore immune from liability to the plaintiff and, as an employee of the immune School Board, he was likewise immune. However, the court stated: "[T]he fact that Albrite was performing a governmental function for his employer, the School Board, does not mean that he was exempt from liability for his own negligence in the performance of such duties." The

court sustained the School Board's demurrer, but remanded the case for a new trial as to Albrite.

In *Lawhorne* v. *Harlan*, 214 Va. 405 (1973), the plaintiff brought a wrongful death action against an intern and two administrators of the University of Virginia Hospital. Plaintiff's decedent (Lawhorne) was alleged to have died because of negligence in the diagnosis, treatment, and care of his injury. The intern, Pulito, had treated Lawhorne for a head injury and released him, failing to determine that Lawhorne had in fact sustained a fractured skull. Lawhorne subsequently died from his injury.

Pulito was alleged to have been negligent in his diagnosis. The administrators were alleged to have been negligent in failing to maintain staff and procedures adequate to diagnose and treat Lawhorne's injury. The court held the hospital administrators were clearly "exercising discretionary powers in performing their duties as administrators of the hospital, and they were clearly entitled to have their pleas of immunity sustained." The court also noted that the doctrine of *respondeat superior* had no application to public officers who act through subordinates in the performance of their official duties.

The court sustained Pulito's plea of immunity also. It noted Pulito was, as an employee of an organization of the Commonwealth, "vested with and required to exercise discretion and judgment in connection with those persons who presented themselves as patients at. . . the hospital." The court found that Pulito was exercising discretionary, not ministerial, duties in treating Lawhorne, and his treatment of Lawhorne had been within the scope of his employment.

In *Short* v. *Griffitts*, 220 Va. 53 (1979), the court held the trial court had erred in sustaining the plea of sovereign immunity submitted by three codefendants. The plaintiff brought an action against the Fairfax County School Board and three officials of Herndon High School for injuries he sustained on the school's track. The plaintiff alleged his injury was caused by the defendants' acts of simple and gross negligence.

In holding that the three school officials (the athletic director, the baseball coach, and the buildings and grounds supervisor) were not entitled to sovereign immunity, the court relied on its decision in *Crabbe*

v. *School Board and Albrite, supra.* It distinguished *Lawhorne* v. *Harlan,* making a distinction between the sovereign Commonwealth and its employees, and a governmental agency and its employees. Employees of a governmental agency were deemed not to enjoy the governmental immunity afforded to the agency, and were thus responsible for their acts of simple or ordinary negligence.

In *James* v. *Jane,* 221 Va. 43 (1980), plaintiffs sought to recover from three full-time members of the medical faculty of the University of Virginia Medical School for alleged negligence in their treatment. The faculty members were licensed physicians. The court held the faculty members were not entitled to plead sovereign immunity as a defense to a malpractice action. The court stated: "a physician who fails to use reasonable care in the treatment of a patient acts at his own risk, and is not entitled to invoke the doctrine of sovereign immunity."

The court in *James* formulated a test for immunity. In determining whether or not an individual is entitled to immunity, a court should examine the function the employee was performing, the extent of the state's interest in that function, the degree of judgment and discretion exercised, and the degree of control and direction exercised by the state. The court noted that it found "no compelling state interest to justify the denial of a patient the right to assert a claim against a physician for negligent treatment."

In its most recent sovereign immunity decision, *Banks* v. *Sellers,* 224 Va. 168 (1982), the court held a division superintendent of schools and a school principal were entitled to a plea of sovereign immunity in a negligence action brought by a student stabbed by another student on school premises during school hours. After an analysis of relevant statutes, constitutional provisions, and precedents, the court held the division superintendent exercised powers "involving a considerable degree of judgment and discretion." He was thus entitled to a plea of sovereign immunity. In his dissent, Justice Cochran lamented the court's departure, in *Banks,* from the "rule for which *Crabbe* stands, that agents and employees of an immune employer are subject to suit for negligence in the performance of their duties."

It is evident, from the descriptions of the respective duties of the defendants, Hutto, Landon, Spann, and Oliver, that these officials are imbued with the responsibility of implementing policies and programs within the state corrections system on a state-wide level. It is also evident that they exercise a certain degree of discretion in the discharge of those duties. It is difficult to imagine a state official implementing policy on such a broad scale without a significant degree of discretion and judgment.

Immunity is available to an employee of the state or of one of its agencies who performs supervisory functions or exercises discretionary judgment within the scope of his employment. He will not be held liable for simple negligence, because his acts are the acts of the Commonwealth. *Richmond* v. *Long's Adm'rs*, 58 Va. (17 Gratt.) 375, 378 (1867); *Sayers* v. *Bullard*, 180 Va. 222, 229 (1942); *Lawhorne* v. *Harlan*, 214 Va. 405 (1973).

Under the criteria for an application of immunity discussed in *James* v. *Jane, supra*, it would appear that Hutto, Landon, Spann, and Oliver still qualify for immunity in this action. Those criteria to be considered are: (1) function of the office; (2) the use of judgment and discretion; and (3) degree of control and direction exercised by the state. The formulation and implementation of state-wide programs within the corrections system by these defendants would appear to indicate that: (1) the function of their respective offices involve far more than the # 1 barn at the James River Correctional Center; (2) a significant degree of personal judgment and discretion are required by each in the exercise of his duties; and (3) state control and direction, as a result, is lessened in order to provide each with sufficient latitude to formulate and implement policy.

Hutto, Landon, Spann and Oliver can be compared to the hospital administrators who were granted immunity in *Lawhorne*. The latter set and implemented policy for the hospital, and the former set and implemented state policy for the hospital, and the former set and implemented state policy for the entire corrections system. Officials of this type must of necessity enjoy immunity in the performance of their duties.

Public Officers are not liable for the misconduct, negligence or omissions of their subordinates in the performance of their public functions. *Richmond* v. *Long's Administrators, supra*; *Sawyer* v. *Corse*, 58 Va. (17 Gratt.) 230 (1867); *Lawhorne* v. *Harlan, supra*; 15 Michie's Jurisprudence, *Public Officers* § 50. They are only liable if negligent *themselves* (emphasis added). The doctrine of *respondeat superior* has no application to public officers who act through subordinates in the performance of their official duties.

In *Matthews* v. *Brown*, 362 F. Supp. 622 (E.D. Va. 1973), a state prisoner filed a civil rights action against state penal authorities, alleging negligence which resulted in his being injured by a license plate machine. The court echoed rejection of *respondeat superior* and stated, at 626: "The rule in [the 4th] circuit appears to be that the higher official cannot be charged with knowledge of his subordinates' acts when he in fact is not aware of them."

As noted in *Lawhorne*, public policy dictates that *respondeat superior* should not apply to public officers who act through subordinates. In the interest of getting the "best and brightest," insofar as possible, to accept public office, those who heed the call for public office should be afforded a measure of protection from liability for negligent acts of subordinates.

The position of Riddle is more tenuous when both the discretionary/ministerial test is applied to his duties and the doctrine of *respondeat superior* analysis is made. Unlike the above defendants, Riddle's "realm" of responsibility did not go beyond the confines of the James River Correctional Center, of which the # 1 barn was a structural part. Correspondingly, his discretion as regards the barn appears to be less and the direction and control applied by the state to his duties would appear to be greater.

However, as superintendent of the James River Correctional Center, he supervised the general planning, organization, and direction of the activities at the Center; he evaluated the institutional programs; and established policies and procedures at the Center. He therefore performed supervisory functions and exercised discretionary judgment within the scope of his employment and is also

immune. I am of the opinion that Riddle comes within the criteria established in *James*, and also his duties and responsibilities are comparable to that of the Division Superintendent and the High School principal in *Banks* v. *Sellers*, *supra*, both of whom were granted immunity.

I therefore sustain the demurrers in this case as to Hutto, Landon, Spann, Oliver and Riddle.