**CIRCUIT COURT OF THE CITY OF RICHMOND**

Dandridge

v.

Bio-Medicus, Inc., et al.

October 10, 1990

Case No. LR-2321-3

By JUDGE T. J. MARKOW

This matter is before the court for decision on the special pleas of sovereign immunity of defendants Sandra Witherington, Paul Arsenault, Linda Brady, and Tyrone Aron and Medical College of Virginia Hospitals, after a hearing and presentation of evidence and argument.

The defendants are perfusionists, specially trained medical personnel who maintain blood circulation during specialized surgeries such as open heart surgery and liver transplants, which require bypassing portions of the body's own systems for pumping, filtering, oxygenating, or otherwise circulating the blood. They are employed to do this job by the Medical College of Virginia (MCV), which is a state hospital for the Commonwealth of Virginia. Defendants claim the immunity of the sovereign.

The plaintiff alleges that due to the negligence of the defendants in performing their duties as perfusionists during coronary artery bypass surgery, the plaintiff's decedent suffered a wrongful death. He claims that the defendants do not meet the tests to entitle them to sovereign immunity, and even if they did, a decision on the pleas is premature, as the acts of negligence may have come in the performance of ministerial acts.

The parties recognized in their oral arguments and in memoranda that the four-factor test established by

the Supreme Court in *James v. Jane,* 221 Va. 43, 282 S.E.2d 864 (1980), and cited with approval in *Messina v. Burden,* 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984), is the framework in which the defendants must be viewed in order to determine the applicability of the doctrine of sovereign immunity to their situations. Stated briefly, these factors are:

1. the nature of the function performed by the employee;

2. the extent of the state's interest and involvement in the function;

3. the degree of control and direction exercised by the state over the employee; and

4. whether the act complained of involved the use of judgment and discretion.

*Messina v. Burden,* 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984).

The function performed by these employees is essential to MCV's ability to offer several highly specialized surgeries. Heart and liver transplants and some delicate pediatric operations are performed exclusively at MCV because of the degree of sophistication required in facilities and support services. Private hospitals, in general, lack the funding to be able to acquire the facilities, equipment, and staff with the expertise needed to provide these kinds of operations. These employees are oftentimes involved in research conducted at their institutions.

The state's interest in providing this service is great, for the lives of many of its citizens are preserved by its availability. Further, the training of surgeons is also accomplished by having the facilities and personnel available at MCV to provide for the observation of, or assistance in, operations with this level of sophistication by students, interns, and residents. The services of perfusionists are required to accomplish these operations and the goals of the state in providing them. This meets the criteria of the first two *James* factors.

The third factor of the state's control over the employee can be profitably examined in the light shed by *Gargiulo v. Ohar,* 239 Va. 209, 387 S.E.2d 787 (1990). There the court compared the defendant, a research fellow at MCV, with the attending physicians at the University of Virginia found liable in *James v. Jane* and with the

intern held to be immune in *Lawhorne v. Harlan*, finding the research fellow to be immune. *Ohar* at 212, 387 S.E.2d at 789; *see also Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973); *overruled on other grounds, First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983).

The perfusionists' status here should also be evaluated by that same comparison, as they, like Dr. Ohar, are engaged in providing health care services but in a different function than as either attending physician or intern. Dr. Ohar, a research fellow, and the intern in *Lawhorne*, were found to be unlike the physicians in *James* because the state had substantial control over their professional conduct, whereas it had virtually no control over the physicians who, once they agreed to accept a certain patient, had a "personal and confidential [relationship] of doctor and patient, not the Commonwealth of Virginia and patient." *James*, 221 Va. at 50, 282 S.E.2d at 867. Dr. Ohar and the intern in *Lawhorne* received no compensation, even indirectly, from the patients, had no ability to forgive or compromise bills, they were "required to obey state-established rules, to employ state-prescribed methods, and to follow state-standardized procedures," and each functioned under the supervision of and subject to the control of superiors employed by the state. *Ohar*, 239 Va. at 215, 387 S.E.2d at 791.

All of the parameters which apply to the positions of Ohar and Lawhorne apply equally to the perfusionists. They are assigned to assist at operations by a schedule drawn up by the Chief of Perfusion. They do not select the patients, or the patients them. They have no power to affect patient billing and are not paid by the patient. They are a part of a surgical team which is under the direction of the surgeon. The physicians in *James* chose the "means and methods used." *Id*. at 214, 387 S.E.2d at 790. Here surgeons have individual preferences for, for example, "flow rates," some preferring a higher volume and rate of blood flow than others, some variations in blood temperatures. The surgeon makes known his preferences, and the perfusionists' job is to meet the surgeon's needs and preferences for the good of the patient. The perfusionists are also under the supervision and control of supervi-

sors who are agents of the state, meeting the requirement of the third element of the test.

They also meet the fourth, as well, since there is a substantial measure of discretion and judgment involved in how they fulfill the requirements of the patient and the surgeon, during an operation. They do not decide, for example, whether their services are required at all for an operation; that is a decision made by the surgeon. But they to decide how to achieve the flow rate, temperature, etc., requested by the surgeon or how to respond to variables in the hemodynamic parameters of blood pressure and pulse. These are not purely ministerial jobs, any more than was that of the *Lawhorne* intern of Dr. Ohar. They are required to exercise judgment and discretion, which meets the fourth part of the test.

The court is of the opinion that it need not wait for evidence of the nature of the task giving rise to the cause of action to determine whether a discretionary or ministerial task was involved. Plaintiff has alleged tasks that are discretionary as the basis for his claims of negligence. Further, he argues in his memorandum that these people, like the doctors in *James v. Jane*, are not entitled to sovereign immunity because of the discretionary nature of their work.

The perfusionists are state employees who, in the exercise of their particular jobs, are entitled to sovereign immunity. The plaintiff concedes that MCV is entitled to sovereign immunity, as well.