428

## CIRCUIT COURT OF RAPPAHANNOCK COUNTY

John Ford
and Marijke Ford

v.

Commonwealth of Virginia,
University of Virginia
Hospital, et al.

April 3, 2002

Case No. CL98-5

BY JUDGE THOMAS D. HORNE

In this medical malpractice action, plaintiffs seek recovery against various health care providers based upon care rendered Jan Ford while a patient at the University of Virginia Hospital during the period from February 12, 1996, to April 4, 1996. At the time he was being treated at the hospital, Jan Ford was seventeen years of age. Jan Ford suffered a left iliac wing fracture, a humerus fracture, and a severe closed head injury as a result of a skiing accident that took place on February 12, 1996. Plaintiffs John Ford and Marijke Ford, his wife, seek to recover the expenses incurred by them as a result of the treatment rendered their son while a patient at the hospital. It is stated that they have assigned their claim against the Commonwealth and its agency to their son Jan.

Joined as defendants in this action are the Commonwealth of Virginia, University of Virginia Hospital, Shepard R. Hurwitz, M.D., and Olumide Danisa, M.D. Dr. Hurwitz was an orthopedic surgeon on the medical staff of the University of Virginia Hospital. In addition to being Jan Ford's attending physician, Dr. Hurwitz had supervisory responsibility over orthopedic residents involved with Mr. Ford's treatment. Among those residents being supervised by Dr. Hurwitz, during the months of February, March, and April of 1996, was the defendant, Olumide Danisa, M.D.

In the spring of 1996, Olumide Danisa was a third year resident in orthopedic surgery at the University of Virginia Hospital. Dr. Danisa was a licensed physician in the employment of the Commonwealth of Virginia. Dr. Danisa's duties as a resident at the hospital were to care for patients and to follow the instructions of the attending physician.

Upon his admission to the hospital, Jan Ford fell under the care of Dr. Hurwitz and Dr. Danisa. Dr. Hurwitz treated the plaintiff for the fracture and wound. Dr. Danisa also provided care and treatment for the injuries sustained by the plaintiff.

It is alleged that, while a resident at the hospital under the general supervision of Dr. Hurwitz, Dr. Danisa was negligent in the care he rendered to the plaintiff. More particularly, it is alleged that he and Dr. Hurwitz deviated from the standard of care by having left gauze in the hip wound for which Jan Ford was being treated; by failing to fully explore the wound to remove foreign objects during dressing changes; by failing to suspect and search for a foreign body when the plaintiff showed signs of infection; and by failing to identify the hip wound as the site of infection.

Dr. Danisa contends that he is entitled to assert the protection of defense of sovereign immunity from claims of simple negligence arising out of his treatment of the plaintiff. Accordingly, he asks that the case should be dismissed as to him. The Court disagrees with the position of Dr. Danisa and will overrule the Plea in Bar.

An examination of such a claim as posited by Dr. Danisa begins with four factors enumerated by the Supreme Court of Virginia in *James v. Jane*, 221 Va. 43 (1980). As the Supreme Court has observed, individual claims of sovereign immunity are to be considered by considering, among other factors, the following:

> (1) the nature of the function performed by the employee;
>
> (2) the extent of the state's interest and involvement in the function;
>
> (3) the degree of control and direction exercised by the state over the employee;
>
> (4) whether the act complained of involved the use of judgment and direction.

*Messina v. Burden*, 228 Va. 301, 313 (1984), *citing James*, 221 Va. at 53.

An examination of the relevant factors and of the actions of the defendant must be made as of the time when "the allegedly negligent act occurred." *Lohr v. Larsen*, 246 Va. 81, 87 (1993).

430

The Court has considered the written submissions of the parties, including the deposition testimony of Dr. Danisa. The negligent acts complained of arise out of the failure to pack and unpack gauze placed in the plaintiff's wound. Dr. Danisa described that the changing of the dressing and removal of the packing, as well as the formulation of a treatment plan for dressing changes, was something he, as a resident, could do without oversight and input from Dr. Hurwitz.

It is the position of the plaintiffs that as a result of the failure to remove the old gauze packing, later discovered during a bone biopsy, Jan Ford developed an infection, sepsis, septic shock, and cardiorespiratory arrest. Accordingly, he has sought damages against the defendants for such injuries.

In *Lawhorne v. Harlan*, 214 Va. 405 (1973), and in *Robertson v. Commonwealth*, 30 Va. Cir. 71 (1993), interns and residents were held immune from acts of simple negligence. In *Lawhorne*, 214 Va. at 407, the Court noted that:

> It has long been the settled law in Virginia that a hospital which is an organ of the state is immune, under the doctrine of sovereign immunity, from actions in tort. This immunity is also available to an employee of the state or of one of its agencies who performs supervisory functions or exercises discretionary judgment within the scope of his employment. He will not be held liable for simple negligence, because his acts are the acts of the Commonwealth. However, an employee of a state agency who performs duties which do not involve judgment or discretion but which are purely ministerial, is liable for injury which results from his negligence. Nor does the cloak of sovereign immunity protect a state employee who commits an intentional tort, or one whose act is so negligent as to take him outside the scope of his employment.

*Id.* (citations omitted).

In *Lawhorne*, 214 Va. at 408, a recent medical school graduate and surgical intern was held immune from suit for negligence arising out of the hospital emergency room care he rendered in connection with the diagnosis and treatment of a skull fracture. Similarly, in *Robertson*, 30 Va. Cir. at 72, an intern and a resident were both alleged to have failed to have taken appropriate steps to properly diagnose the condition of the plaintiff. As a result of the failure to properly diagnose his condition and inform him of the necessity for treatment, a prolonged bacterial infection caused damage to the plaintiff's aortic valve and the need for open-heart surgery to replace the valve.

Finding the resident and intern immune from suit, the Court noted that, "[a] medical diagnosis or the process to reach one entails the weighing and counterbalance and the attention to details of any number of constituent acts." *Id.* at 73. No such degree of discretion is implicated in the negligent acts alleged in the instant case.

It should be noted that the factors enumerated in *James* are neither exclusive nor hierarchical. Whether an employee is performing judgmental rather than ministerial duties is, "not always determinative" of their entitlement to claim immunity. *Gargiulo v. Ohar*, 239 Va. 209, 213 (1990). Thus, a board-certified physician participating as an employee and student in a state funded research project has been held immune from suit for failing to secure a catheter properly. *Id.* at 215. Similarly, a board certified obstetrician and gynecologist in the employ of the Virginia Department of Health has been held immune from suit in connection with a breast examination conducted at a Public Health Clinic. *Lohr v. Larsen*, 246 Va. 81 (1993).

In the instant case, the Court must determine whether a medical doctor, paid by the Commonwealth, in the third year of a four-year residency, is immune from suit. As part of its examination of the record and of the factors, the Court, "must assess whether the act as to which liability is asserted involved the exercise of judgment and discretion." *Heider v. Clemons*, 241 Va. 143, 145 (1991). Contrariwise, the Court must determine whether the medical care rendered Jan Ford was ministerial in nature.

At the time of the alleged malpractice in this case, Dr. Danisa was training under the supervision of Dr. Hurwitz. He had no choice in the selection of his patients. The Commonwealth paid him for his services. As a resident, he was participating in an educational process through which the Commonwealth and its citizens are assured quality health care. It goes without saying that the interest of the Commonwealth in ensuring the proper training of those practicing medicine is of a keen interest to the public.

However, Dr. Danisa was at the time of the alleged negligent conduct, complained of by the plaintiff, furnishing routine health care to a patient at the University of Virginia Hospital. He had completed sufficient years of education that would have permitted him to plan for and implement packing and unpacking procedures for the wound. Although he was at the time a paid employee of the Commonwealth, he was also a licensed physician.

While it may be said that providing health care services necessarily involves the exercise of some discretion, such discretion may be so inconsequential as to not be of little significance when considering a grant of immunity to the health care provider. The instant case does not involve a diagnosis of disease. Overall planning for the treatment of the patient was in

the hands of Dr. Hurwitz. Instead, the procedure that gave rise to the instant action involves a routine medical procedure. For purposes of the analysis, the Court determines, based upon the experience of Dr. Danisa, that this was a ministerial act not requiring the exercise of judgment and discretion.

At the time of the instant act of alleged malpractice, Dr. Danisa, though engaged in the pursuit of his medical training and under the control of the Commonwealth, was delivering routine health care in the Commonwealth for which he may not claim immunity for acts of simple negligence.

The Plea will be overruled.