# CIRCUIT COURT OF THE CITY OF RICHMOND

Patricia Gargiulo

v.

Jill Ann Ohar et al.

July 28, 1988

Case No. LL-1360-1

By JUDGE MELVIN R. HUGHES, JR.

A hearing was held in this case on defendant Jill Ann Ohar, M.D.'s (Ohar) plea of sovereign immunity. Upon consideration of the evidence and the parties' arguments and memoranda, the Court has decided to grant defendant's plea, for the reasons explained below.

The Court views the question presented as one of whether defendant Ohar, a pulmonary fellow at the Medical College of Virginia Hospital, is entitled to the cloak of immunity afforded state hospital interns in *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), and residents in *Hall v. Roberts*, 548 F. Supp. 498 (W.D. Va. 1982), but denied to attending physicians in *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980), for alleged simple negligence in the practice of medicine by state hospital personnel. A review of these cases is necessary to understand the legal context of the instant case.

In *Lawhorne*, a surgical intern of the University of Virginia Hospital was sued for medical malpractice. In deciding he was entitled to sovereign immunity, the Court found that he was a Commonwealth employee who exercised judgment and discretion in his work. The Court also noted he had no right to choose his patients, had no contractual relationship with them (receiving compensation not from

the patients but the hospital), and as an intern was not fully licensed to practice medicine except in an approved training program under the supervision of licensed physicians of the hospital staff.

In *James v. Jane*, another medical malpractice case, the Court held that the defendants were not entitled to immunity. The defendants were licensed physicians and full-time faculty members for the U. Va. Medical School. Like the intern in *Lawhorne*, they too were Commonwealth employees engaged in discretionary tasks and received no compensation from their hospital patients but instead a hospital salary. The Court noted, however, that as attending physicians they had the privilege to select the patients they wished to treat, could exercise broad discretion in selecting the method of treatment, and were allowed to compromise or forgive patients' bills.

As explained in *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657, 663 (1984), the *James* Court set out several factors to consider in determining entitlement to immunity:

1. The nature of the function performed by the employee;

2. The extent of the state's interest and involvement in the function;

3. The degree of control and direction exercised by the state over the employee; and

4. Whether the act complained of involved the use of judgment and discretion.

The *James* Court found that the state had little interest and involvement in treatment of a specific patient by an attending physician, distinguishing the *Lawhorne* intern on this ground.

In *Hall v. Roberts*, the court held that the *James* Court distinguished the *Lawhorne* case and that *Lawhorne* was still good law. The Court also found that the term "resident" was used at the hospital rather than "intern" to describe a physician in training under the supervision of faculty and staff, and that under *Lawhorne* state hospital residents are entitled to immunity.

With these cases in mind, the Court next considers the pertinent facts in the instant case. Plaintiff has sued defendant for her alleged negligent treatment of

her in connection with a Pulmonary Hypertension in Progressive Systemic Sclerosis Project at M.C.V.

Alpha Fowler, an attending physician at M.C.V., an associate professor of medicine, division of pulmonary disease, testified to the following facts. He teaches both interns and fellows. At the time of the treatment in question, defendant was in the second year of a six-year fellowship in pulmonary medicine. Although defendant was licensed to practice medicine generally, a full-fledged license is not considered a sufficient qualification to practice medicine at M.C.V. M.C.V. is a referral center for treatment of unusual disorders difficult to treat. Plaintiff is diagnosed as suffering from scleroderma, a disease with no known cure at the time of treatment in question. Plaintiff was participating in a research protocol, which is a plan for the treatment and evaluation of the disease. Dr. Fowler wrote the protocol for plaintiff, with defendant assisting. Defendant treated plaintiff according to the protocol and under the supervision of Dr. Fowler and others. Dr. Fowler had the right to approve defendant's orders or change them, and he would see plaintiff with defendant and separately as well as review the records. Defendant did have to use judgment and discretion in her treatment, though, such as making decisions to move plaintiff on to the next step in the protocol. Also, significantly, defendant was a salaried employee of M.C.V., had no choice in her patients, and could not forgive bills. Defendant's affidavit corroborates Dr. Fowler's testimony.

Plaintiff maintains that she was not aware of any other doctor attending her during treatment; defendant did all the paperwork, signed all the documents, did all the consulting and treatment of plaintiff, and plaintiff's private doctor was told to consult with defendant. She points out that defendant had completed her internship six years earlier and her residency three years earlier. Since defendant denies reporting any matter relating to the treatment of plaintiff to any hospital official, medical society, or other medical organization, plaintiff argues that defendant did not view plaintiff's injuries as a matter for the hospital to address but as a matter to be resolved personally within their doctor/patient relationship. The court considers the question of immunity as a question of law to be determined by viewing the situation

objectively rather than considering the plaintiff's subjective knowledge. Although the issue is a close one, the Court considers defendant's situation to be more like that of the intern in *Lawhorne* than of the attending physicians and faculty members in *James v. Jane*. In spite of her license to practice, defendant was still a physician in training, was carefully supervised in her work, and did not enjoy the same freedoms with regard to patients, billing, and methods of treatment as attending physicians.

The Court's decision is also influenced by the fact that the treatment here was for an unusual disorder pursuant to a protocol. Since such treatment is hard to find in the private sector, and the state has an interest in providing for such treatment by teaching and training doctors, this case is an especially appropriate one for sovereign immunity.