## CIRCUIT COURT OF ALBEMARLE COUNTY

Linda Deeds

v.

Salvatore DiMercurio et al.

September 4, 1991

Case No. 4450-L

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court on the Plea of Sovereign Immunity filed by Salvatore DiMercurio, M.D. The Plea was argued before the Court on July 10, 1991, and counsel for the parties have submitted legal authority for consideration by the Court.

### Statement of Facts

On November 18, 1989, the plaintiff, Linda Deeds, was admitted to the University of Virginia Hospital for treatment of burns to the front of her hands and feet. When Mrs. Deeds arrived at the hospital, she had not suffered burns or injuries of any sort to the backs of her legs and feet. The surgical treatment, which required the application of skin grafts to the affected areas, was performed by Dr. Raymond F. Morgan, assisted by Dr. Salvatore DiMercurio, a Burn Fellow at the Hospital. After the grafting procedure had been completed, Dr. DiMercurio applied plaster splints to the back of Mrs. Deed's legs and feet. These splints were designed to prevent movement of her legs so that the grafts would not dislodge.

The splints applied by Dr. DiMercurio were to harden through a chemical reaction in the plaster, an exothermic reaction which gave off heat. If the plaster splints were not properly prepared and applied, the patient's skin would be burned. The package insert provided by the manufacturer of the splints described these hazards in some detail. The application of these splints was neither an advanced nor an experimen-

tal procedure. Typically, the necessary techniques are learned while in medical school, and less-qualified staff employees, such as physical therapists and technicians are routinely allowed to apply these splints.

When the splints applied by Dr. DiMercurio were removed from Mrs. Deeds's legs, it was discovered that she had suffered thermal burns to the areas covered by the splints. Mrs. Deeds then filed suit alleging negligence in the application and preparation of the splints by Dr. DiMercurio.

In response, Dr. DiMercurio has filed a plea of sovereign immunity, basing his claim on his status as an employee of the University. At the time of the alleged negligence, Dr. DiMercurio was in the fifth month of his three-year plastic surgery specialty training program at the University. Prior to entering this program, however, he had completed five years of general surgery training in New York, during which he learned the technique of applying plaster splints. He received no instruction in the use of such splints after he entered the University's Burn Program.

### Question Presented

Under Virginia law, should the doctrine of sovereign immunity be extended to protect a medical research fellow from a negligence action arising from the performance of a routine medical procedure?

### Discussion

Virginia courts have outlined a four-part test which must be met by state employees seeking the protection of sovereign immunity. Each element of the test is essential, and a moving party which fails to meet its burden of proof on any one of the elements will be denied immunity.

When considering a state employee's motion for sovereign immunity, a Virginia court must consider four elements: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in that function; (3) the degree of control and direction exercised by the state over the employee, and; (4) whether the act complained of involved the use of judgment and discretion. *Messina v. Burden*, 228 Va. 301 (1984).

Under Virginia law prior to 1980, the sovereign immunity of the Commonwealth was generally extended to state employees so long as their actions required the exercise of some judgment or discretion and were not solely ministerial in nature. *Wynn v. Gandy*, 170 Va. 590

(1938). This practice served the twin policy goals of protecting the resources of the state and ensuring that state government officials would not hesitate to act out of a fear of being sued. *Messina v. Burden*, 228 Va. 301, 308 (1984).

In *James v. Jane*, 221 Va. 43, 53 (1980), however, the Virginia Supreme Court placed a number of restrictions on the sovereign immunity doctrine. Whether the act performed by the employee involved the use of judgment or discretion would no longer be the sole consideration, since "[v]irtually every act performed involves the exercise of some discretion." *Id.* In order for a state employee to make a successful claim of sovereign immunity, the *James* court held that he must demonstrate (1) that he was acting as the agent of the Commonwealth (i.e., was under the control of the state) at the time of the alleged negligence, and (2) that the Commonwealth had a substantial interest in the activity giving rise to the suit. *Id.*

The Virginia Supreme Court has had an opportunity to apply this test on several occasions. In the *James* decision itself, the court refused to grant immunity from a malpractice action to a group of resident physicians employed at the University Hospital. *Id.* at 55. The court held that while the doctors performed both as educators employed by the state and as private doctors, they were acting as private physicians at the time of the alleged negligence and were therefore not truly subject to state control. *Id.* Furthermore, the court held that the state's interest in the treatment of a private patient by an attending physician was not sufficiently compelling to deny the plaintiffs a cause of action against the doctors. *Id.*[1]

In *Gargiulo v. Ohar*, 239 Va. 209, 215 (1990), on the other hand, the Virginia Supreme Court held that a medical research fellow at a state hospital was entitled to the protection of sovereign immunity from liability for medical malpractice allegedly committed against a patient participating in a medical research program. *Id.* at 214–15. The court noted that the defendant, Dr. Ohar, had virtually no control over the

---

[1] The *James* court took care to distinguish a prior case, *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), in which it was held that state hospital interns would generally be granted the benefits of sovereign immunity on the grounds that promoting the education of new physicians is a compelling state interest. The Western District of Virginia has held that the cloak of immunity granted to state hospital interns in *Lawhorne* was not upset by the decision in *James*. *Hall v. Roberts*, 548 F. Supp. 498, 502 (W.D. Va. 1982).

patients she dealt with and was subject to the direction of the hospital (and hence the state) at all times. *Id.* at 214. The court also found that Ohar's participation in the experimental program required her to exercise a substantial degree of discretion in the activities which gave rise to the cause of action. *Id.* Finally, the Virginia Supreme Court agreed with the Richmond Circuit, which held that the Commonwealth had a strong interest in Ohar's activities because the experimental treatment provided by the program was not readily available in the private sector. *Gargiulo v. Ohar*, 13 Va. Cir. 225, 228 (1988).

## Application

The doctrine of sovereign immunity should not be extended to the defendant, Dr. DiMercurio, in the case now before this court. While it is true that the Commonwealth exercised a substantial degree of control over the defendant's activities as a "burn fellow," the defendant has failed to satisfy the other three elements of the *James* test. Since the defendant has failed to meet his burden of proof, the motion for immunity is denied.

### Judgment and Discretion

It seems unlikely that Dr. DiMercurio's routine application of a commercially-available splint required the level of judgment and discretion which the Supreme Court envisioned in *James*. The defendant himself testified that lesser-trained health care personnel routinely apply such splints. The directions for their application were even included in the packaging. As a result, while the skin-grafting procedures performed on the plaintiff by Drs. Morgan and DiMercurio may well have been sophisticated and complex, the application of the splints following those procedures appears to have required almost no independent discretion at all.

### Nature of Activity/State Interest

The Virginia Supreme Court has held that "the student function is essential to the achievement of the Commonwealth's goal, one undertaken in the public interest, of training and maintaining a pool of specialists skilled in a particular discipline." *Gargiulo*, 239 Va. at 213. Thus, an intern in a state hospital, who would otherwise be unqualified to practice medicine, will be entitled to immunity under *James* because the Commonwealth has an interest in maintaining a supply of qualified physicians. *James*, 221 Va. at 54. Similarly, in granting immunity to

the fully-licensed research fellow in *Gargiulo*, the Court specifically noted that the research and educational objectives achieved through Dr. Ohar's program of study were of sufficient interest to the Commonwealth to justify the denial of an otherwise valid claim in tort. *Gargiulo*, 239 Va. at 213.

The application of a commercially-available splint is not of sufficient interest to the state to justify granting immunity to the defendant in this case, however. Dr. DiMercurio was not an unqualified intern but a research fellow learning a specialty. Had the alleged negligence occurred during the skin graft procedure itself, it is likely that immunity would apply to Dr. DiMercurio (but not to Dr. Morgan). The application of the splints was not, however, an integral part of the defendant's training program. In fact, Dr. DiMercurio has himself testified that he had applied similar splints on a number of previous occasions. Since there was no educational aspect to the defendant's allegedly negligent act and the procedure would not have been "hard to find in the private sector," *Gargiulo*, 13 Va. Cir. at 228, there is no state interest to shield the defendant from liability. As the Supreme Court has noted previously, the state's interest in the treatment of a specific patient by a particular physician is "slight" and will rise to the level required for immunity only where some other educational or research objective is present. *James*, 221 Va. at 54.

## Conclusion

While Dr. DiMercurio's situation closely resembles that of the medical research fellow in *Gargiulo*, there are sufficient distinctions between the two cases to warrant the denial of sovereign immunity in the instant case. Dr. Ohar's alleged negligence occurred during the course of a medical research program which provided services not otherwise available in the private sector. Those procedures were sufficiently complex to require the exercise of a considerable degree of discretion. Furthermore, the procedures being performed at the time of the patient's injury were not only part of Dr. Ohar's own personal training, but added significantly to the research goals of the state-funded fellows program as well. In Dr. DiMercurio's case, none of these elements was present. The defendant's allegedly negligent activity consisted of nothing more than the routine application of a commercially-available splint, which could have been performed as easily by lesser-qualified

hospital employees. Simple directions were included with the splints, so that their application required little discretion or judgment.

Perhaps most important, however, is the fact that no research or educational objectives were being served by Dr. DiMercurio at the time of the plaintiff's injury. He had already learned how to apply such a splint previously. The fact that he may not have learned how to do it very well is no excuse for the negligent treatment of a patient. In addition, no new frontiers in medicine were being established by the defendant's activities; the fact that directions were included indicates that the application of these splints has been well-researched in the past. As a result, it is difficult to see how the defendant's allegedly negligent behavior served a sufficiently compelling state interest to warrant the denial of the plaintiff's cause of action.