**CIRCUIT COURT OF ALBEMARLE COUNTY**

Adele Hicks,
Guardian, etc.

v.

Susan M. Pollart

October 1, 1991

Case No. (Law) 3627-L

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court on the Plea of Sovereign Immunity filed by Susan M. Pollart, M.D., which was argued orally before the court on July 24, 1991.

### Statement of Facts

On September 17, 1986, Edith Walters was admitted to the University of Virginia Hospital for evaluation and treatment at the Allergy Clinic. Ms. Walters was examined by Susan Pollart, a research fellow at the Allergy Clinic, who prescribed certain asthma medications on the basis of the treatment plan previously instituted by Dr. Platts-Mills, the supervising faculty physician. Dr. Pollart then instructed both Ms. Walters and her sister, Mrs. Adele Hicks, in the proper administration of the prescribed medication.

On September 27, 1986, Ms. Walters was admitted to the U.Va. Emergency Room complaining of shortness of breath and back pain. Upon further investigation, it became apparent that Ms. Walters was suffering from a Theophylline overdose from the medications prescribed for her asthma condition. She was discharged a month later. On January 1, 1987, Ms. Walters died, and the autopsy revealed the cause of death to be "myocardial infarction and acute thrombosis due to severe coronary artery atherosclerosis."

Mrs. Hicks, as representative of Ms. Walters' estate, has filed suit against Dr. Pollart, alleging that Dr. Pollart was negligent in the pre-

scription and administration of the asthma medications taken by Ms. Walters. In response Dr. Pollart has filed a plea of sovereign immunity on the basis of her status as an employee of the Commonwealth.

## Question Presented

Under Virginia law, should the doctrine of sovereign immunity be extended to protect a medical research fellow from a negligence action arising from the performance of a discretionary medical procedure, where that procedure is an integral part of the medical research program in which the research fellow is participating?

## Discussion

Virginia courts have outlined a four-part test which must be met by a state employee seeking the protection of sovereign immunity. Each element of the test is essential, and a moving party who fails to meet its burden of proof on any one of the elements will be denied immunity.

When considering a state employee's motion for sovereign immunity, a Virginia court must consider four elements:

(1) the nature of the function performed by the employee;

(2) the extent of the state's interest and involvement in that function;

(3) the degree of control and direction exercised by the state over the employee, and;

(4) whether the act complained of involved the use of judgment and discretion.

Where the state's interest in the employee's activities is great and the state exercises considerable control over the employee, sovereign immunity will protect any employee performing an action in the course of his employment which requires discretion and judgment.

Under Virginia law prior to 1980, the sovereign immunity of the Commonwealth was generally extended to state employees so long as their actions required the exercise of some judgment or discretion and were not solely ministerial in nature. *Wyne v. Gandy*, 170 Va. 590, 197 S.E. 527 (1938). This practice served the twin policy goals of protecting the resources of the state and ensuring that state government officials would not hesitate to act out of a fear of being sued. *Messina v. Burden*, 228 Va. 301, 308 (1984).

## Limitations on Sovereign Immunity

In *James v. Jane*, 221 Va. 43, 53 (1980), however, the Virginia

Supreme Court placed a number of restrictions on the sovereign immunity doctrine. Whether the act performed by the employee involved the use of judgment or discretion would not longer be the sole consideration, since "[v]irtually every act performed involves the exercise of some discretion." *Id.* In order for a state employee to make a successful claim of sovereign immunity, the *James* court held that he must demonstrate (1) that he was acting as the agent of the Commonwealth (i.e., was under the control of the state) at the time of the alleged negligence, and (2) that the Commonwealth had a substantial interest in the activity giving rise to the suit. *Id.*

The Virginia Supreme Court has had an opportunity to apply this test on several occasions. In the *James* decision itself, the Court refused to grant immunity from a malpractice action to a group of resident physicians employed at the University Hospital. *Id.* at 55. The court held that while the doctors performed both as educators employed by the state and as private doctors, they were acting as private physicians at the time of alleged negligence and were therefore not truly subject to state control. *Id.* Furthermore, the court held that the state's interest in the treatment of a private patient by an attending physician was not sufficiently compelling to deny the plaintiffs a cause of action against the doctors. *Id.*[1]

In *Gargiulo v. Ohar,* 239 Va. 209, 215 (1990), on the other hand, the Virginia Supreme Court held that a medical research fellow at a state hospital was entitled to the protection of sovereign immunity from liability for medical malpractice allegedly committed against a patient participating in a medical research program. *Id.* at 214–215. The court noted that the defendant, Dr. Ohar, had virtually no control over the patients he dealt with and was subject to the direction of the hospital (and hence the state) at all times. *Id.* at 214. The court also found that Ohar's participation in the experimental program required him to exercise a substantial degree of discretion in the activities which gave rise to the cause of action. *Id.* Finally, the Virginia Su-

---

[1] The *James* court took care to distinguish a prior case, *Lawhorne v. Harlan,* 214 Va. 405, 200 S.E.2d 569 (1973), in which it was held that state hospital interns would generally be granted the benefits of sovereign immunity on the grounds that promoting the education of new physicians is a compelling state interest. The Western District of Virginia has held that the cloak of immunity granted to state hospital interns in *Lawhorne* was not upset by the decision in *James Hall v. Roberts,* 548 F. Supp. 498, 502 (W.D. Va. 1982).

preme Court agreed with the trial court, which held that the Commonwealth had a strong interest in Ohar's activities because the experimental treatment provided by the program was not readily available in the private sector.

## Application

The doctrine of sovereign immunity should be extended to protect the defendant, Dr. Pollart, in the case now before this court. The examination and treatment of Ms. Walters required both judgment and discretion from Dr. Pollart and was an integral part of a research program of considerable importance to the Commonwealth. Furthermore, the Commonwealth exercised a substantial degree of control over Dr. Pollart during her participation in the program. As a result, all four parts of the *James* have been met, and the defendant has met her burden of proof on the motion for sovereign immunity.

### Nature of Activity/State Interest

As the defendant suggests, the first two parts of the test may properly be considered together. In the instant case, the essential nature of the defendant's activity was educational; she was gaining practical knowledge in the treatment and diagnosis of allergies. The Virginia Supreme Court has held that "the student function is essential to the achievement of the Commonwealth's goal, one undertaken in the public interest, of training and maintaining a pool of specialists skilled in a particular discipline." *Gargiulo*, 239 Va. at 213. Thus, an intern in a state hospital, who would otherwise be unqualified to practice medicine, will be entitled to immunity under *James* because the Commonwealth has an interest in maintaining a supply of qualified physicians. *James*, 221 Va. at 54. Similarly, in granting immunity to the fully-licensed research fellow in *Gargiulo*, the Court specifically noted that the research and educational objectives achieved through Dr. Ohar's program of study were of sufficient interest to the Commonwealth to justify the denial of an otherwise valid claim in tort. *Gargiulo*, 239 Va. at 213.

In the instant case, the defendant's circumstances are substantially similar to Dr. Ohar's situation in *Gargiulo*. Although Dr. Pollart had completed her residency prior to entering the Allergy Program, she was certified to practice only family medicine and was not an allergy specialist. At the time of the alleged negligence, she was engaged in a course of medical research and education designed to provide epi-

demiologic studies of asthma in adult patients which would benefit the entire medical community. Thus, while the treatment provided to Ms. Walters might arguably have been available in the private sector, it was nevertheless an integral part of a research and educational program of considerable importance to the Commonwealth. As a result, Dr. Pollart's activities at the time of the alleged negligence were of sufficient educational and scientific interest to the Commonwealth to satisfy the first two prongs of the *James* test.

*Degree of Control*

As a research fellow in the Hospital's Allergy Program, Dr. Pollart's activities were subject to a substantial degree of control by the Commonwealth. She had no control over the patients she treated, nor did she bill them directly. She participated in patient examinations in accordance with the hospital's schedule and operated under the direct supervision of Dr. Platts-Mills. While it appears that she exercised some discretion over her choice of treatments in any particular case, she was nevertheless charged with implementing the overall treatment plan devised by Dr. Platts-Mills. As a result, the third part of the *James* test has been satisfied.

*Judgment and Discretion*

On this issue, it would appear that both parties are in agreement. Dr. Pollart's treatment of Ms. Walters required the exercise of significant judgment and discretion. It is true that the course of treatment prescribed by Dr. Pollart was ultimately subject to the supervision and control of senior faculty physicians and that she was guided by a previous treatment plan instituted by Dr. Platts-Mills. However, the precise means of implementing that treatment plan were left to Dr. Pollart, and at the time of the alleged negligence, she exercised her own judgment concerning the medications provided to Ms. Walters, within the bounds of that plan. The fourth part of the *James* test has therefore been satisfied.

## Conclusion

Dr. Pollart's situation is sufficiently similar to that of the medical research fellow in *Gargiulo* to warrant the application of sovereign immunity. Her alleged negligence occurred during the course of a medical research program which provided valuable scientific data to the medical community. The course of treatment provided by Dr.

Pollart was sufficiently complex to require the exercise of a considerable degree of discretion. Furthermore, the procedures being performed at the time of the patient's injury were a significant part of Dr. Pollart's own personal training as an allergy and epidemiologic specialist, as well. As a result, the defendant has satisfied each part of the *James* test and should be granted the protection of sovereign immunity.