## CIRCUIT COURT OF ALBEMARLE COUNTY

Catherine P. Booth

    v.

Commonwealth of Virginia et al.

April 30, 1993

Case No. 5065-L

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on Defendants' Plea of Sovereign Immunity. The Plea was argued before the court on April 21, 1993, and counsel for the parties have submitted legal authority for consideration by the court.

The plaintiff in this matter, Catherine P. Booth, sustained a spinal cord injury in a fall in July, 1989. After an initial evaluation at Allegheny Hospital, she was transferred to the University of Virginia Medical Center for further evaluation. On July 19, 1989, Dr. Jane, an attending neurosurgeon, requested an orthopedic consult to evaluate Ms. Booth, in order to determine whether the use of halo traction was appropriate in her case.

After evaluation, it was decided that Ms. Booth's injuries required halo traction. The procedure, which is fairly involved, requires at least two people to position and attach the halo unit. The team assigned to carry out the procedure was comprised of the defendants in this action, Jonathan Chang, Michael Coe, and Wun Jer-Shen. At the time of the procedure, Dr. Chang was a third-year resident and was in charge of Ms. Booth's treatment. Dr. Coe was a second-year resident, and Dr. Jer-Shen was a first-year resident. The evidence presented to the court thus far indicates that this team of residents, led by Dr. Chang, was entirely responsible for the fitting and placement of the device.

Ms. Booth has filed suit against the Defendants in this case, alleging that they were negligent in managing her spinal column fracture with the halo traction device. In particular, she alleges that the Defendants

were negligent in the placement of the halo pins required to immobilize her in the halo vest and that they failed to properly monitor the in sites and the halo device after placement.

In response, the defendants have filed a plea of sovereign immunity, based on their status as employees of the University taking part in the training program for orthopedic interns.

### Discussion

In Virginia, employees of the Commonwealth must be able to satisfy each element of a four-part test before they may enjoy the protection of sovereign immunity. *James v. Jane*, 221 Va. 43, 53 (1980). Each element of the test is essential, and an employee who fails to meet its burden of proof on any one of the elements will be denied immunity. *Hicks v. Pollart*, 27 Va. Cir. 7, 8 (1991).

In *Messina v. Burden*, 228 Va. 301 (1984), the Supreme Court held that, when considering a state employee's plea of sovereign immunity, a trial court in Virginia must consider each of the following four elements:

(1) the nature of the function performed by the employee;

(2) the extent of the state's interest and involvement in that function;

(3) the degree of control and direction exercised by the state over the employee; and

(4) whether the act complained of involved the use of judgment and discretion.

This court has become familiar with this test and has had an opportunity to apply it on several occasions. In *Deeds v. DiMercurio*, Albemarle Cir. Ct., Law No. 4450-L (1991) (Peatross, J.), this court considered a plea of sovereign immunity by a research fellow who had allegedly misapplied a thermal splint to a patient, burning her severely. In denying immunity, the court noted that the routine application of a commercially-available splint was not sufficiently discretionary to meet the standard set out in *Messina*. In addition, the court also found that the "state interest" test, contained in the first two parts of the test above, were not met because Dr. DiMercurio was neither participating in an educational program at the time, nor was he conducting any significant medical research. His activities amounted to nothing more than the ordinary physician-patient relationship, which the Supreme

Court has already found insufficient to support a plea of immunity, absent unusual circumstances. *James*, 221 Va. at 54. In short, Dr. DiMercurio was simply not engaged in activity of sufficient social interest to warrant the extension of sovereign immunity.

In *Hicks v. Pollart*, 27 Va. Cir. 7 (1991), on the other hand, this court granted a plea of sovereign immunity made by a research fellow, Dr. Pollart, who had been taking part in a research program at the University Hospital Allergy Clinic and who was studying to become an allergy specialist. In the course of her training, the defendant had prescribed certain asthma medications to a patient, Edith Walters, as part of the program in the Allergy Clinic. Ms. Walters subsequently died, and her sister sued Dr. Pollart, claiming negligence in the prescription and administration of the asthma medication.

The court found that Dr. Pollart was entitled to the benefit of sovereign immunity. Like Dr. DiMercurio, Dr. Pollart was subject to the control and supervision of the University Hospital. However, her actions in prescribing medication for Ms. Walters required substantially more discretion than was required in the routine application of a thermal splint. More important, however, was the fact that Dr. Pollart was engaged in an educational program at the time she prescribed the medication. It was a part of her own education as an allergy specialist. The court recognized that the Commonwealth not only has an interest in the education of unqualified interns, as stated in *James*, 221 Va. at 54, but that it also has a stake in the education of fully-qualified doctors in a particular field of expertise. *Gargiulo v. Ohar*, 239 Va. 209, 213 (1990). Since the alleged negligence occurred while Dr. Pollart was in the process of learning just such a specialty, the court found a sufficiently compelling state interest to warrant immunity.

### Application

Since the authorities cited above are sufficient to begin an analysis of the problem at hand, the court will now proceed to examine the case at bar. The court finds, however, that the circumstances of the individual defendants differ sufficiently to require separate treatment.

### Dr. Coe and Dr. Jer-Shen

Turning first to the two subordinate residents, Drs. Coe and Jer-Shen, the court finds that sovereign immunity should be granted. Both Plaintiff and Defendants appear to agree that the "state control" test

has been met, particularly for these two defendants. Neither of them had any choice in the patients they treated, nor did they bill their patients directly. In fact, their role appears to have been little more than that of observers, or at most, assistants.

Despite this, however, the court also finds that their role in the placement of the halo traction device required a sufficient exercise of judgment and discretion on their part to pass the "discretion" test. Given their level of expertise with this particular procedure, it is likely that any amount of participation in placing the halo device would tax their professional abilities to the fullest. To be sure, a more experienced physician might have found the subordinate's role in this procedure less than challenging. The fact that the part played by Drs. Coe and Jer-Shen might have been "ministerial" for an accomplished specialist is largely irrelevant to the court's analysis, however.

Finally, the court finds that the "state interest" test, which is actually a combination of the first two elements of the *James* test, *Hicks*, 27 Va. Cir. at 10, has been satisfied by both Dr. Coe and Dr. Jer-Shen. As previously noted, the Commonwealth retains an interest in the continuing education of a physician, even after he has become fully-licensed to practice medicine. As the Supreme Court put it, "the student function is essential to the achievement of the Commonwealth's goal, one undertaken in the public interest, of training and maintaining a pool of specialists skilled in a particular discipline." *Gargiulo*, 239 Va. at 213. Dr. Jer-Shen was in his first year of his orthopedic residency and had, according to his own testimony, witnessed perhaps one or two halo procedures before this one. Dr. Coe had little more experience, having placed, or assisted in the placement of, at most ten halo vest units prior to Ms. Booth's. In testimony on April 21, Dr. Jer-Shen indicated that a physician is not considered to have learned the skills necessary for placing a halo device on his own until he has performed the procedure roughly twenty to thirty times. Neither Dr. Jer-Shen nor Dr. Coe had even approached this level of experience at the time of the incident in question. Consequently, this court finds that both of them were, like Dr. Pollart before them, in the process of learning a specialty when the alleged negligent acts took place. This court also finds that the Commonwealth had an interest in the specialized education of the two doctors, since that would better provide for "a pool of specialists" capable of placing halo vest units. Accordingly, this court holds that Drs. Coe and Jer-Shen have met each element of the *James* test and are

entitled to the protection of sovereign immunity as a result. The defendants' Motion to Dismiss is therefore granted as against Dr. Coe and Dr. Jer-Shen.

### Dr. Chang

Just as with the two less-experienced residents, there appears to be little disagreement over the extent of control exercised by the Commonwealth over Dr. Chang. Like any resident, he had virtually no control over the patients he would treat and did not bill them through the ordinary physician-patient relationship. Accordingly, the court finds that Dr. Chang has demonstrated sufficient "state control" to pass that part of the *James* test.

In addition, Dr. Chang appears to have been primarily responsible for determining the exact placement of the halo device, as well as for ensuring that it was applied properly. Although the halo traction device employed in this case has been in use by doctors for many years, its application to any single individual is a customized effort, requiring the exercise of judgment and discretion as to any number of variables, including pin placement and tightness. The court therefore finds that Dr. Chang has successfully demonstrated a sufficient degree of discretion to pass the "discretion" test under the *James* analysis.

Where Dr. Chang differs significantly from the other two residents is his level of experience with the halo traction device. The evidence indicates that Dr. Chang, who was in his third year of residency, had already placed, or assisted in the placement of, a halo vest unit approximately thirty or forty times. According to Dr. Jer-Shen's testimony, that is sufficient to be considered qualified in placing such devices, a conclusion supported by the fact that Dr. Chang was in charge of the entire procedure. Thus, the court must conclude that Dr. Chang was not in the process of learning a specialty at the time of the alleged negligence. At least in the Hospital's eyes, Dr. Chang had already learned this particular specialty and was sufficiently qualified not only to perform the procedure without supervision, but who was also charged with the duty of teaching his specialty to other, less-experienced residents.

Dr. Chang argues that this last point, the fact that he was responsible for teaching Drs. Coe and Jer-Shen, is sufficient to bring him within the educational aspect of the "state interest" test and that he should therefore be granted immunity. However, Dr. Chang has presented, and

the court can find, no authority that extends the shield of immunity from doctors *learning* a specialty to doctors *teaching* a specialty. In both *Hicks* and *Gargiulo*, the defendant physicians were themselves in the process of learning a specialty, not teaching one. In *Lawhorne v. Harlan*, 214 Va. 405 (1973), one of the earlier cases granting immunity to state physicians, the court again emphasized the need to protect interns who were being trained as doctors. It did not, however, conclude that similar consideration need be given to the doctors who were teaching those interns.

In fact, this court actually considered this very issue in *Deeds*, at page 5. There, the court noted that, if the alleged negligence had occurred during the skin grafting procedure, rather than during the subsequent placement of the splints, then Dr. DiMercurio would have been in the process of learning a specialty and would therefore have fallen within the umbrella of sovereign immunity. The court then suggested, however, that Dr. Morgan, the attending physician, would not have been immune for negligently performing the skin graft, even though he would have been teaching Dr. DiMercurio at the time.

This result makes sense from a policy viewpoint as well. To extend immunity to include the teachers as well as the students is unnecessary to achieve the goal of a well-educated and trained medical community. If we are to have a continuing supply of trained physicians in the Commonwealth, we must give young doctors the opportunity to "learn by doing" without fear of crushing liability. To accomplish this, it is sufficient simply to shield the students from liability while they are watching and learning from practicing physicians. Shielding the teaching physicians in addition will do nothing to further the Commonwealth's educational goals. It will however encourage carelessness on the part of teaching physicians, as well as needlessly deprive the injured plaintiff of a chance to recover for her potentially devastating injuries. Accordingly, this court finds that Dr. Chang's status as the resident-in-charge is insufficient, as a matter of law, to establish the educational foundation needed to meet the "state interest" test.

Dr. Chang also raises the argument that the halo procedure is a highly technical one, not available in most local hospitals, and that he therefore meets the "state interest" test on the grounds that the procedure is "hard to find in the private sector." *See, Gargiulo v. Ohar*, 13 Va. Cir. 225, 228 (1988). Dr. Chang has failed to present any evidence

to this effect, however. In fact, Dr. Jer-Shen, a witness for the Defendants, was unable to testify that the procedure was unavailable at private hospitals in the Commonwealth. Dr. Chang bears the burden of proof on his plea of sovereign immunity and has failed to meet that burden with regard to this aspect of his position. The court must therefore find that Dr. Chang has not satisfied the requirements of the *James* test and must therefore be denied the protection of sovereign immunity. The defendant's motion to dismiss is hereby denied as to Dr. Chang.