## CIRCUIT COURT OF ALBEMARLE COUNTY

Helen Floyd

v.

Barry B. Chan

November 20, 1995

Case No. 5905-L

BY JUDGE PAUL M. PEATROSS, JR.

Defendant Barry B. Chan, M.D., has entered a Plea of Sovereign Immunity in response to the medical malpractice action filed by plaintiff Helen Floyd. Ms. Floyd alleges that she was injured as a result of the negligence of defendant Chan and of defendant William C. Stevenson, M.D., while she was a patient at the University of Virginia Medical Center ("the Hospital"). At all times relevant to this action, Dr. Chan was employed by the Hospital as a general surgery resident.

The issue to be determined is whether defendant Dr. Chan, as an employee of a state institution, is entitled to the cloak of sovereign immunity from liability in tort. Counsel presented oral argument on October 23 and submitted briefs on the issue. The parties have stipulated the following facts for the purposes of resolving this issue.

### Facts

On June 8, 1992, the plaintiff was admitted to the Hospital through the emergency department, where Hospital personnel requested a vascular surgery consult. Dr. Chan responded because he was the vascular surgery resident on call. He examined the plaintiff and diagnosed an abdominal aortic aneurysm. He relayed his findings to the attending physician, Dr. Stevenson, and recommended surgery. Dr. Stevenson agreed, and the plaintiff was scheduled for surgery the following day.

On June 9, Dr. Chan performed an abdominal aortic aneurysm repair on the plaintiff under the direct supervision of Dr. Stevenson. Dr. Chan was

the most senior resident on duty because the chief resident was not available.

Following surgery, the plaintiff was transferred to the surgical intensive care unit ("SICU") where physicians on that unit followed her progress. Dr. Stevenson and Dr. Chan, as the vascular surgery resident, also continued to provide care for the plaintiff in the SICU, seeing her and checking her pulses. When checked, the plaintiff's distal pulses were not detectable. The plaintiff was cold, afebrile, and exhibited no movement in her lower extremities.

Dr. Chan remained on call through the night of June 9 and the morning of June 10. During that period, Dr. Chan saw the plaintiff several times without Dr. Stevenson in attendance, and the plaintiff remained cold, afebrile, and without lower extremity movement or distal pulses. It was the responsibility of Dr. Chan and the other physicians on the SICU to follow the plaintiff and to notify Dr. Stevenson of any significant changes in her condition.

On June 10, when the plaintiff's lower distal pulses were still not measurable, Dr. Chan ordered several studies, which indicated a clot in the graft. He notified Dr. Stevenson, who directed that the plaintiff be returned to the operating room for surgery. During this surgery, Dr. Chan and Dr. Stevenson confirmed that the graft placed in the June 9 surgery was clotted, and they inserted a new graft.

Dr. Chan treated the plaintiff pursuant to his participation in a general surgery residency at the Hospital. The residency is a seven-year program which includes two years of research and five years of clinical training. At the time Dr. Chan treated the plaintiff, he had completed his two years of research and was finishing his third year of clinical work.

As a general surgery resident, Dr. Chan was required to rotate through the various surgical services. On June 8, 1992, Dr. Chan was in his second month of a required three-month rotation through the vascular surgery service. As part of that rotation, Dr. Chan was required to be on call, to respond to consultations, and to assist with and to perform various surgeries with supervision. Attending physicians assigned Dr. Chan surgeries based on their perception of his ability and his level of training. The purpose of the rotation was to train him in and familiarize him with the treatment of vascular surgery patients.

Dr. Chan had assisted with and/or performed approximately five to ten aneurysm surgeries before he performed surgery on the plaintiff. Plaintiff's

surgery was the first case in which Dr. Chan dealt with a lot of a graft placed for an abdominal aortic aneurysm.

## Analysis

The Supreme Court of Virginia has consistently applied a multi-factor test when considering whether a state employee is entitled to the protection of sovereign immunity for allegedly negligent acts. The test as first enunciated in *James v. Jane* had four parts. 221 Va. 43, 282 S.E.2d 864 (1980). Recently, the Court in *Lohr v. Larsen*, 246 Va. 81, 341 S.E.2d 642 (1993), modified the test in form but not substance, combining two of the factors to yield a three-part test which weighs the following: (1) the employee's function and the Commonwealth's interest and involvement therein; (2) the employee's use of judgment and discretion; and (3) the Commonwealth's control over and direction of the employee. *See Lohr*, 246 Va. at 85-88. Satisfaction of all the elements is necessary before a court may afford the protection of sovereign immunity. *See id.* at 88. In the instant case, plaintiff's counsel has agreed that the facts satisfy the second and third elements. Therefore, the Court's inquiry will focus on the first element.

### The Employee's Function
### and the Commonwealth's Interest
### and Involvement Therein

In *Gargiulo v. Ohar*, the Supreme Court held that a physician who was a participant in a state-sponsored research and training program was entitled to sovereign immunity for alleged acts of negligence committed as part of that program. 239 Va. 209, 387 S.E.2d 787 (1990). The Court found that the physician's function was "to assist as an employee and student in the conduct of a basic medical research program" and that "the student function is essential to the achievement of the Commonwealth's goal . . . of training and maintaining a pool of specialists skilled in a particular discipline." *Id.* at 213.

In the instant case, the parties have stipulated that throughout Dr. Chan's care and treatment of the plaintiff, Dr. Chan was participating in a general surgery residency. Plaintiff asserts, however, that at the time of the alleged acts of negligence, Dr. Chan was not functioning within the scope of his residency training. In support of her argument, plaintiff directs the Court's attention to its holding in *Deeds v. DiMercurio*, 30 Va. Cir. 532 (1991).

In *Deeds*, this Court held that a Burn Fellow at the University of Virginia Hospital ("the Hospital") was not entitled to sovereign immunity for his alleged negligence in applying plaster splints to the legs and feet of a patient who had just undergone a skin-grafting procedure. *Id.* The physician had learned how to apply the splints during his general surgery training in New York and had received no instruction regarding the use of such splints after beginning training at the Hospital. *Id.* at 533. The Court found that because "the application of the splints was not . . . an integral part of the defendant's training program," immunity did not attach. *Id.* at 536.

In the instant case, the plaintiff alleges that Dr. Chan was negligent in failing to communicate basic post-operative findings to the attending physician, Dr. Stevenson. *See* Memorandum in Opposition to Defendant's Plea of Sovereign Immunity, p. 5. Dr. Chan's responsibility was to "notify Dr. Stevenson of any significant changes in condition." Stipulation of Facts, paragraph 3. However, Dr. Stevenson was fully aware of the plaintiff's post-operative condition because he examined the plaintiff himself with Dr. Chan. The plaintiff's condition did not change throughout that night. When Dr. Chan discovered a clot in the graft the next day, it was then that he notified Dr. Stevenson. *See id.* at paragraphs 3-5. Thus, the essence of the plaintiff's negligence claim is that Dr. Chan did not timely notify Dr. Stevenson of an absence of change.

The ability to determine when the post-operative condition of a patient who has undergone an abdominal aortic aneurysm repair should begin to improve requires specialized training and education. Whereas the physician in *Deeds* had learned how to apply the splints through training other than the Hospital's Burn Program, the very purpose of Dr. Chan's training was "to train him in and familiarize him with the treatment of vascular surgery patients." *See id.* at paragraph 7. Dr. Chan was unfamiliar with the symptoms and treatment of a clot in a graft placed for an abdominal aortic aneurysm because the plaintiff was his first patient who experienced such a problem. *See id.* at paragraph 9. Consequently, providing treatment to the plaintiff was part of his education and training in vascular surgery; and, as stated in *Gargiulo*, the Commonwealth has a strong interest in training and maintaining a pool of specialists skilled in particular disciplines. 239 Va. at 213.

## Conclusion

Dr. Chan's function was that of a student participant in a general surgery residency which required a vascular surgery rotation. Making determina-

tions regarding the significance of the absence of change in a patient's condition after a skin graft procedure is part of the educational process, in which the Commonwealth has a significant interest. Accordingly, Dr. Chan's Plea of Sovereign Immunity is granted.