# CIRCUIT COURT OF ORANGE COUNTY

Colleen Lilly

v.

William C. Brink et al.

March 31, 2000

Case No. 96-62

By Judge Edward L. Hogshire

In this medical malpractice action stemming from the death of James Franklin Lilly, Jr., one of the defendants, William C. Brink, M.D., has entered a Special Plea of Sovereign Immunity. The Court conducted an *ore tenus* hearing on October 13, 1999, so that the parties could present evidence on the special plea. The Court, having heard oral argument and reviewed the briefs and evidence, is prepared to rule on whether the doctrine of sovereign immunity bars the claim against Dr. Brink in the instant action.

*Statement of Facts*

For the purposes of this motion, the Court adopts the facts from those set forth by the Defendant in his briefs and those adduced at the *ore tenus* hearing. The Court notes that none of the material facts set forth below appear to be disputed by the Plaintiff.

On Monday, September 26, 1994, the Plaintiff's decedent, James Franklin Lilly, Jr., sought medical care at the offices of University Physicians in Orange, Virginia. William C. Brink, M.D., a resident physician, saw Mr. Lilly. After a physical exam and assessment, Dr. Brink diagnosed Mr. Lilly as having suffered indigestion and discharged him without prescribing treatment. Dr. Brink later presented a report of this diagnosis to Dr. John T. Philbrick, an attending physician, as protocol required him to do. Dr. Philbrick signed off on Dr. Brink's diagnosis of Mr. Lilly.

On September 26, 1994, Dr. Brink was in his second year of residency as a resident physician of the Health Sciences Center of the University of Virginia, which is a state entity. University Physicians is a facility operated by the University of Virginia to which Dr. Brink was assigned for a one-month rotation as a part of his training. While not licensed as a physician at the time, Dr. Brink was eligible to seek his license from the Commonwealth and during his training was employed by the Commonwealth.

Dr. Philbrick was also an employee of the Commonwealth. On the date in question, he was acting as an attending physician, with responsibility over Dr. Brink. It is undisputed that Dr. Brink treated Mr. Lilly on his own and that Dr. Philbrick was available to assist Dr. Brink had the circumstances required it. Dr. Philbrick was not aware of Mr. Lilly's visit to the offices of University Physicians on September 26, 1994, until Dr. Brink presented the case to him after Mr. Lilly's discharge.

On the same day as his visit to University Physicians, Mr. Lilly died at his home of a cardiac event. The Plaintiff alleges that the failure of either Dr. Brink or Dr. Philbrick to perform adequate testing and to correctly diagnose Mr. Lilly's condition led directly to his death.

### Question Presented

Is Dr. Brink entitled to sovereign immunity based on his position as a student in a medical residency program at a state-run hospital?

### Discussion of Authorities

All parties are in agreement that the basic framework which should be applied to resolve the sovereign immunity question in this case was provided by the Virginia Supreme Court in *James v. Jane*, 221 Va. 43 (1980). This case articulated four factors that should be applied by a trial court in its determination of whether a state employee's special plea of sovereign immunity should be granted. These factors are:

(1) the nature of the function performed by the employee;

(2) the extent of the state's interest and involvement in that function;

(3) the degree of control and/or direction exercised by the state over the employee; and

(4) whether the act complained of involved the use of judgment and discretion.

*James*, 221 Va. at 53. To be entitled to the protection of sovereign immunity, the party seeking immunity must demonstrate that they have met all four factors. Immunity must be denied if any of the factors are not met.

In the case at hand, the Plaintiff concedes that Dr. Brink has satisfied the fourth factor in the *James* test, as he necessarily exercised both judgment and discretion in the function that he performed. As such, this Court must review each of the remaining three factors as they apply to the Defendant.

## A. *The Nature of the Function Performed by Dr. Brink*

Dr. Brink has argued that his evaluation of Mr. Lilly was an integral part of his residency training and that he was, therefore, performing an important state function. In support of this proposition, the Defendant points to the fact that all of his conduct in regards to Mr. Lilly took place in the context of his residency training in outpatient medicine at University Physicians in Orange, Virginia.

It is undeniable that Dr. Brink treated Mr. Lilly while he was a student. The student capacity has been held by the Virginia Supreme Court to be a function worthy of the protection of sovereign immunity. According to the Court in *Gargiulo v. Ohar*, 239 Va. 209, 213 (1990), an intern in a state-funded research program was entitled to sovereign immunity, as "the student function is essential to achievement of the Commonwealth's goal, one undertaken in the public interest, of training and maintaining a pool of specialists in a particular discipline." Similarly, Judge Peatross in *Booth v. Commonwealth*, 30 Va. Cir. 359 (1993), held that two residents satisfied the first *James* factor as both were acting as students when a negligent act was committed. Judge Peatross relied on a pre-*James* decision, *Lawhorne v. Harlan*, 214 Va. 405 (1973), when he indicated that "the court ... emphasized the need to protect interns who were being trained as doctors." *Booth* at 361.

While it is undeniable that Dr. Brink treated Mr. Lilly while he was a student, this Court questions whether in his treatment he was functioning as a student or as a doctor. While the intern in *Gargiulo* was held to be entitled to sovereign immunity protection, her allegedly negligent act was committed during a research project, and not while treating a patient. Similarly, the interns in *Booth* were in the process of learning a new procedure; they were not, like Dr. Brink, applying things that they had learned previously.

Although the intern in *Lawhorne* was granted sovereign immunity after simple negligence committed in the treatment context, the Court finds that the subsequent body of case law calls into question whether it is appropriate to grant sovereign immunity to an individual based solely on the nature of their

employment, not on the specific function they are performing at the time of the alleged negligence. The court in *James* notes that the intern in *Lawhorne* was granted immunity because of his "inexperience, [the fact that] he was closely controlled, supervised, and directed by his employer." 221 Va. at 54.

The Court finds that the function performed by Dr. Brink was more analogous to that performed by a practicing physician than that of a student. While it is true that he was a student at the time he treated Mr. Lilly and that he was under the supervision of an attending physician, one can hardly say that he was undertaking a training function in the public interest. Dr. Brink diagnosed, treated, and released Mr. Lilly as any private, fully trained physician would have. His mere status as a student at the time, absent some affirmative act specifically inherent to it, does not meet this factor of the *James* test.

B. *The Extent of the State's Interest in the Function Performed by Dr. Brink*

Dr. Brink has argued that the Commonwealth has a significant interest in the specialty training of physicians such as Dr. Brink. In support of this proposition, the Defendant cites the Supreme Court decision in *Lee v. Bourgeois*, 252 Va. 328, 332 (1996), which held that the Commonwealth has a significant interest in "training and maintaining a pool of specialists skilled in a particular discipline."

But this principle notwithstanding, the Court does not accept the Defendant's argument that to deny a resident sovereign immunity is to curtail the State's medical training function. While some evidence was presented that reducing post-graduate medical education programs to one year would "wipe out all of the specialties" in Virginia, it has not been demonstrated that a decision denying Dr. Brink, or those similarly situated, sovereign immunity would have that same result.

Additionally, it should be noted that while the Commonwealth does have a significant interest in the training of physicians, the state's interest in the treatment of a specific patient is slight. *James* at 224. As this Court has determined that the principle function of Dr. Brink here was *patient care* and not training or education, this factor also cuts against a grant of sovereign immunity.

C. *The Degree of Control and/or Direction Exercised by the State over Dr. Brink*

Dr. Brink has argued that he was subject to substantial state control in providing medical care to patients as a part of his residency training. Dr. Brink could not pick and choose his patients, could not refuse to treat any patient assigned to him, and was required to report on his care and treatment of Mr. Lilly for oversight and evaluation. While attending physicians are ultimately responsible for their own diagnosis and as such do not qualify for sovereign immunity, *see James*, 221 Va. at 48, and *Lee*, 252 Va. at 334-35, Dr. Brink did not find himself in this situation. Even though the oversight of Dr. Philbrick may have been perfunctory at best, it was still substantial oversight, as all of Dr. Brink's decisions could have been summarily contradicted. The fact that Mr. Lilly had been sent home prior to this review taking place is not dispositive, as, had Dr. Philbrick determined that Dr. Brink erred, presumably, Mr. Lilly would have been contacted with a new course of treatment.

Plaintiff's claims to the contrary, the Defendant's mere status as a resident is sufficient to satisfy this factor, as the very definition of residency requires a degree of control and direction by the Commonwealth which is not present for licensed, practicing doctors. While it is true that Dr. Brink was accorded a great deal of latitude and discretion in treating his patients, a long leash is still very much a leash. While this Court does not mean to imply that any supervision is sufficient to satisfy this factor, the degree of control exercised over Dr. Brink as a second year resident certainly was.

## Conclusion

Having failed to satisfy the first and second factors of the *James* analysis for the aforementioned reasons, Dr. Brink's plea must fail. The Court hereby denies his Special Plea of Sovereign Immunity.